950 So.2d 544 (2006)
Tammy Kay DUNCAN
v.
U.S.A.A. INSURANCE COMPANY, James S. Cameron and Maloni R. Sartin-White, Western Heritage Insurance Company.
No. 2006-CC-363.
Supreme Court of Louisiana.
November 29, 2006.
Rehearing Denied February 16, 2007.
Opinion Dissenting from Denial of Rehearing February 16, 2007.
*545 Ungarino & Edkert, Matthew J. Ungarino, David I. Bordelon, Metairie, for Applicant.
Frischhertz & Associates, Lloyd N. Frischhertz, Jr., William J. Levenson, Marc L. Frischhertz, New Orleans, McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Michael R. Sistrunk, Metairie, for Respondent.
Stevan C. Dittman, New Orleans, Attorney for Louisiana Trail Lawyers Association Amicus Curiae.
KIMBALL, J.
The issue presented in this case is whether UM coverage was validly waived when the line for policy number was left blank on the form prescribed by the commissioner of insurance. For the reasons that follow, we find the UM statute requires that the blank for the policy number contained on the insurance commissioner's form be filled in to effectuate a valid waiver of UM coverage and, therefore, UM coverage was not effectively waived in this instance. Accordingly, we affirm the judgment of the court of appeal, granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment.

FACTS AND PROCEDURAL HISTORY
On May 16, 2003, Tammy Kay Duncan ("plaintiff") was a guest passenger in a vehicle operated by Shea Rembert that was rear-ended by a vehicle operated by defendant Maloni Sartin-White, who had herself been rear-ended by a vehicle operated by defendant James Cameron. Plaintiff filed an action in the Twenty-Fourth Judicial District Court against Maloni Sartin-White, who was uninsured, James Cameron, and James Cameron's insurer, U.S.A.A. Insurance Company. Plaintiff later supplemented her petition to add Western Heritage Insurance Company ("Western Heritage") as a defendant, alleging that Western Heritage was the *546 uninsured/underinsured motorist ("UM") carrier for the vehicle operated by Shea Rembert.
Western Heritage thereafter filed a motion for summary judgment and prayed that it be dismissed from the action. Western Heritage asserted it did not provide UM coverage because the owner of the insured vehicle, Robert Rembert, had validly rejected UM coverage on August 16, 2002. In response, plaintiff filed a cross motion for summary judgment alleging the UM rejection was invalid and, therefore, Western Heritage's UM coverage should be equal to the $100,000 liability limits of the policy.
The district court granted plaintiff's cross motion for summary judgment and denied Western Heritage's motion for summary judgment. In its reasons for judgment, the district court explained the waiver of the UM coverage was ineffective because the form was not properly completed according to the 1997 amendment to La. R.S. 22:1406 (redesignated as La. R.S. 22:680 by 2003 La. Acts No. 456). Because the Western Heritage UM form failed to follow the appropriate language of the statute, the district court held there was UM coverage of $100,000 equal to the liability limits of the policy.
Western Heritage applied for supervisory writs, which the Court of Appeal, Fifth Circuit, granted, stating:
This court has previously held that the absence of a policy number on a UM rejection form does not invalidate the rejection, provided that the form complies in all other respects with La. R.S. 22:680. Knight v. Owens, 03-1064 (La. App. 5 Cir. 2/23/04), 869 So.2d 188.
After a review of the UM waiver at issue, we find that the waiver is valid and therefore the trial court should have granted relator's Motion for Summary Judgment.
Plaintiff then filed a writ of certiorari with this court, which was granted with an order remanding the matter to the court of appeal for briefing, argument and opinion. On remand, a different panel of the Fifth Circuit Court of Appeal, in a split decision, ruled in favor of plaintiff. The court reasoned that pursuant to the 1997 amendment, a rejection must now be made only on a form prescribed by the commissioner of insurance, and that the commissioner of insurance promulgated a UM form with a line for the policy number in the lower right-hand corner of the form. Spaces were provided for the policy number on the form in this case, but they were left blank. Citing Cohn v. State Farm Mut. Auto Ins. Co., 03-2820, p. 4 (La.App. 1 Cir. 2/11/05), 895 So.2d 600, 602, and Roger v. Estate of Moulton, 513 So.2d 1126, 1131 (La.1987), the court of appeal stated, "The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression does not meet the formal requirements of law." The court of appeal denied Western Heritage's writ, noting the incomplete form, the liberal construction given the UM statute and the strict construction accorded any statutory exceptions to coverage. The dissenting judge stated the form was properly completed as required by La. R.S. 22:680 even without the policy number. Western Heritage then applied for a writ of certiorari to this court, which was granted to address the issue of whether UM coverage was effectively waived when the insured left the line for policy number blank on the form prescribed by the commissioner of insurance.

DISCUSSION
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The summary judgment procedure is favored and *547 designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. In ruling on the present cross motions for summary judgment, we will determine whether either party has established there are no genuine issues of material fact and it is entitled to judgment as a matter of law.
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. Roger, 513 So.2d at 1130; A.I.U. Ins. Co. v. Roberts, 404 So.2d 948, 949 (La.1981). The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992); Henson v. Safeco Ins. Co., 585 So.2d 534, 537 (La.1991); Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 578 (La.1982).
UM coverage is determined not only by contractual provisions, but also by applicable statutes. Roger, 513 So.2d at 1130. Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. Daigle v. Authement, 96-1662, p. 3 (La.4/8/97), 691 So.2d 1213, 1214; Henson, 585 So.2d at 537.
This court has held the statute is to be liberally construed. Daigle, 96-1662 at p. 3, 691 So.2d at 1214; Roger, 513 So.2d at 1130. The liberal construction given the UM statute requires the statutory exceptions to coverage be interpreted strictly. Roger, 513 So.2d at 1130. Any exclusion from coverage in an insurance policy must be clear and unmistakable. Daigle, 96-1662 at p. 3, 691 So.2d at 1214; Roger, 513 So.2d at 1130. In accordance with this strict construction requirement, the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Tugwell, 609 So.2d at 197.
As stated by this court in Roger, 513 So.2d at 1130:
The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage under La. R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. (Citations omitted.)
The right to reject UM coverage and the method of rejection have been addressed several times by the Louisiana Legislature. Henson, 585 So.2d at 537; See also Historical and Statutory Notes to La. R.S. 22:1406. The original UM statute, adopted by 1962 La. Acts No. 187, required *548 UM coverage in every automobile liability insurance policy issued in Louisiana, in an amount not less than the limits mandated by law for bodily injury damages. Henson, 585 So.2d at 537. The initial statute also gave the named insured the right to reject UM coverage. Id.
Although early versions of the UM statute did not explicitly require a rejection in writing, the courts interpreted the statute, by looking to general insurance laws, as requiring a written rejection. Henson, 585 So.2d at 537; See A.I.U. Ins. Co., 404 So.2d at 949. Thereafter, 1977 La. Acts No. 438 specifically required that the rejection of UM coverage be in writing.
In 1987 La. Acts No. 436, La. R.S. 22:1406 was amended to require that any rejection or selection of lower limits shall be made only "on a form designed by each insurer." In Tugwell, 609 So.2d at 197, this court held that the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage.
In Daigle, 96-1662 at pp. 3-4, 691 So.2d at 1214-15, this court explained the legislature's directive that the form be "designed by each insurer" as follows:
Implicit in the legislature's direction to insurers to design a form, was the responsibility to design a form that would fairly effectuate the intent of the law. The legislature did not mandate that the form be designed in any particular way, nor did it indicate that any particular language was sacrosanct. The legislature had to have anticipated that various insurers might go about the design of the necessary form in different ways. Moreover, as in any case where the same type of document is drafted separately by multiple authors, it is to be expected that some forms will be better than others. Had the legislature believed that only one format was acceptable or that only certain words or phrases could be used, it would have included the required format in the statute. It did not do so. Thus, the question before us is not whether the form used by Louisiana Indemnity was the best form that anyone could possibly devise. Rather, the question before us is whether the form designed and used by Louisiana Indemnity was adequate for the purpose intended by the legislature.
As described by this court, various insurers designed different types of forms, which the courts often analyzed to determine whether the statutory and jurisprudential requirements were met. See, e.g., Daigle, 96-1662 at pp. 4-5, 691 So.2d at 1215; Tugwell, 609 So.2d at 197.
In 1997, the legislature recognized the problems inherent in allowing the insurers to design their own UM forms and amended La. R.S. 22:1406 to state that "such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance."[1] The legislature again amended La. R.S. 22:1406 in 1999 to state that an initial *549 rejection or selection remained valid for the life of the policy. 1999 La. Acts No. 732.[2] Thereafter, in 2003 La. Acts No. 456, the legislature amended the statute to delete the provisions about forms executed prior to the effective date of the Act and re-designated the UM provisions as La. R.S. 22:680.[3]
The issue before us today is whether the UM statute requires that the blank for the policy number contained on the insurance commissioner's form be filled in to effectuate a valid waiver of UM coverage. Several courts of appeal have addressed this issue with varying results. In Cohn, 03-2820 at p. 5, 895 So.2d at 602, the First Circuit, in declaring the waiver of UM coverage ineffective, stated that by not including a complete policy number, checking off the name of the insurance company, or indicating that the officer of *550 the company was signing in a representative capacity, the UM waiver was not `clear and unmistakable.' Similarly, the Third Circuit, in Spera v. Lyndon Prop. Ins. Co., 00-1373, pp. 3-4 (La.App. 3 Cir. 3/7/01), 788 So.2d 56, 59-60, interpreted the phrase "properly completed" to mean that every relevant blank on the form must be addressed, and therefore, found an attempted waiver of UM coverage invalid that left the date, the name of the insurance company, and policy number blank. The Second Circuit, however, in Jones v. Jones, 36,040, p. 5 (La.App. 2 Cir.5/8/02), 817 So.2d 454, 456, determined that the failure to include the policy number did not render the policy invalid as the insured knowingly rejected coverage. Likewise, in Barney v. Progressive Sec. Ins. Co., 03-0435, p. 4 (La. 4 Cir. 9/24/03), 857 So.2d 1122, 1124, the Fourth Circuit held that the insured validly rejected UM coverage despite the lack of a policy number on the prescribed form. The Fifth Circuit, in Dupuy v. Allstate Ins. Co., 05-497, p. 6 (La.App. 5 Cir. 12/27/05), 920 So.2d 244, 247, upheld a waiver of UM coverage made on the form prescribed by the commissioner of insurance, although the date and policy number were absent. Nevertheless, the Fifth Circuit, in the instant case, ultimately determined that the lack of a policy number on the form precluded an effective waiver of UM coverage. Thus, we turn to the UM statute to analyze whether the blank for the policy number must be completed to effectuate a valid waiver of UM coverage.
As we begin our interpretation of the UM statute, we are mindful that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the wording of a section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La. R.S. 1:4. The words of a law must be given their generally prevailing meaning, and words of art and technical terms must be given their technical meaning when the law involves a technical matter. La. C.C. art. 11; La. R.S. 1:3.
Moreover, the legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter and court decisions construing those articles or statutes, and where the new article or statute is worded differently from the preceding law the legislature is presumed to have intended to change the law. La. R.S. 24:177(C).
The statutory language most pertinent to our analysis is the 1997 amendment, which states, in part:
[S]uch rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.
1997 La. Acts No. 1476.
The second and third sentences of the subsection, beginning "[t]he prescribed form" and concluding "physically attached thereto," remain virtually unchanged by *551 the 1997 amendments, with the exceptions that the word "prescribed" was added to modify "form" and the newly-added option of selecting "economic-only" coverage is referenced.
The first sentence also references "economic-only" coverage, but more importantly dictates that the rejection or selection "shall be made only on a form prescribed by the commissioner of insurance," not by the insurer. The legislature uses the mandatory "shall" and the restrictive "only" to emphasize that the use of any other forms or methods of rejecting UM coverage are invalid.
In the fourth sentence of the subsection, the legislature adds an entirely new provision, which states, "A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." The meaning of this new language, particularly the phrase "properly completed and signed form," is disputed by the parties.
Plaintiff contends that the phrase "properly completed" requires that the insured complete the form to the specifications set forth by the commissioner of insurance. Every blank on the form, therefore, must be filled. Plaintiff relies in part on the bulletin promulgated by the commissioner of insurance, LIRC 98-01, which states, "For identification purposes, the company name must be placed at the lower left-hand corner and the policy number at the lower right-hand corner of the Form." Moreover, plaintiff asserts that it would be absurd to "conclusively presume" that the UM form becomes a part of the policy when the policy is not referenced and the form is not physically attached thereto. Plaintiff questions how the parties determine which policy the UM waiver is "conclusively presumed" to become a part of. Accordingly, plaintiff suggests that if an insured has two policies and one waiver of UM coverage, then the rejection could be "conclusively presumed" to become a part of both policies.
Western Heritage contends that the only requirements for a valid rejection of UM coverage are those explicitly imposed by the statute. Thus, the form is properly completed if parties comply with the statutory requirements. Specifically, the statute requires only: (1) that the rejection or selection be made on a form prescribed by the commissioner of insurance; (2) that the form be provided by the insurer; and (3) that the form be signed by the named insured or his legal representative. Western Heritage argues that it has complied with all of these requirements and that the absence of a policy number should not be fatal to the waiver of UM coverage.
Before we determine whether the statute requires that all aspects of the form be complied with, let us now consider what the prescribed form entails. Essentially, the prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.
The argument that the statute only requires those components explicitly mentioned in the statute implies some of the blanks on the form are optional, precatory, or at least not necessary for a valid UM waiver. For instance, the statute does not state that the rejection or selection must be initialed. Under this argument, the rejection or selection of coverage would need not be initialed and a checkmark *552 would be sufficient. But see Dyess v. American Nat'l Prop. & Cas. Co., 03-1971, pp. 7-9 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, 453. Likewise, the statute refers to a "rejection, selection of lower limits, or selection of economic-only coverage" but does not address the insured filling in the exact amount of coverage desired. Arguably, the insured could select the option of lower limits under the mandate of the statute without filling in the blanks stating the exact limits for each person and each accident. Moreover, the statute does not require that the named insured or legal representative print his or her name, date the document, or include the policy number. If the only mandatory elements of the form are those outlined by the statute, then UM coverage would effectively be waived as long as one of the coverage options was checked and the form was signed.
If the statute requires only these bare essentials, then it seems unnecessary for it to direct the commissioner of insurance to prescribe a form. The legislature could have simply prescribed the form itself within the statute. See, e.g., La. R.S. 40:1299.58.3. In directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require.
The commissioner of insurance, in drafting the form, requires six tasks, all of which we find to be pertinent in rejecting UM coverage. The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or the legal representative signs the form evidencing the intent to waive UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to. Thus, the policy number is relevant to the determination of whether the insured waived UM coverage for the particular policy at issue.
Our discussion does not end here, however, as the statute goes on to state, "A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." This language, added in 1997, reflects a significant change in the law. The statute dictates that a "properly completed and signed form," is now presumed to constitute a knowing waiver of UM coverage. This presumption exists because the prescribed form, if properly completed, clearly evidences the insured's intent to waive UM coverage. The legislature, therefore, shifts the analysis away from the muddied question of whether the insured made an informed decision to knowingly waive coverage. Instead, the legislature states if the insurer uses the form prescribed by the commissioner of insurance and makes certain that it is properly completed and signed, then the insurer receives a presumption that the insured's waiver of coverage was knowing.
Significantly, this provision of the bill was amended various times while in committee and on the floor. The original and engrossed versions of HB 2513 (La.1997) state, "The completion of this form shall be conclusive proof that the person completing the form made an informed and knowledgeable decision in the selection of the uninsured motorist coverage." (Emphasis added.) The provision is entirely absent from the reengrossed version. A Senate floor amendment suggests the following: "A properly completed and signed form creates a rebuttable *553 presumption that the insured knowingly and intelligently waived or selected the uninsured motorist coverage selected, if any." Thus, these various versions, which vacillate between whether the presumption is conclusive or rebuttable, nevertheless, consistently emphasize that the presumption applies to the issue of whether or not the waiver was "knowing."
It has been suggested that even if the form is not properly completed, the result is merely that the presumption does not apply and therefore the insurer must prove the insured knowingly waived coverage. We disagree.
This argument conflates the issues of form and intent. We find that, "The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law," as stated by the First Circuit Court of Appeal in Cohn, 03-2820 at p. 5, 895 So.2d at 602, citing Roger, 513 So.2d at 1131. As stated above, the legislature gave the commissioner of insurance the authority to create a form and stated that "such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. By failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage.
Moreover, we distinguish this failure to comply with the form prescribed by the commissioner of insurance from other types of clerical errors in insurance contracts. In Samuels v. State Farm Mut. Auto. Ins. Co., 06-0034, p. 9 (La.10/17/06), 939 So.2d 1235, 1241 this court stated that a clerical error on the declarations page of a policy can be reformed to reflect the mutual intent of the parties. In that case, however, we addressed whether one umbrella policy was in excess of another umbrella policy, and we specifically considered that the outcome did not affect the amount of coverage afforded the insured. Id. at 1239.
In contrast, in Washington v. Savoie, 92-2957, pp. 6-7 (La.4/11/94), 634 So.2d 1176, 1180, this court differentiated UM coverage from other aspects of insurance law in the context of reformation, stating:
While it appears clear that the parties in this case were in good faith when they attempted to correct a mutual mistake, a court's allowing the parties to change the effective date of the waiver by agreement, after the occurrence of plaintiffs' accidents and after the institution of lawsuits, would encourage bad faith "cooperation" between an insurer who seeks to avoid payment of claims and a named insured whose premiums are fixed on the basis of its loss experience. Although reformation of an insurance policy provision is valid between the parties when either party can prove a mistake in the policy which does not reflect their mutual intent, public policy precludes reformation of the effective date of a UM coverage rejection when the change adversely affects the rights of persons insured under the policy to recover damages under the UM coverage provisions before the change.
Similarly, the same concern of bad faith cooperation expressed in Savoie applies to the instant case because a third party guest passenger, not the insured, is attempting to recover under the UM coverage. *554 Thus, reformation of a UM waiver is precluded when the change adversely affects the rights of persons who, prior to the reformation, would be able to recover damages under the UM coverage provisions.
Therefore, we find the failure to fill in the policy number on the form prescribed by the commissioner of insurance invalidates the UM waiver, and consequently, the UM coverage is equal to the liability limits of the policy.

DECREE
For the foregoing reasons, we hold the UM statute requires that the blank for the policy number be filled in on the form prescribed by the commissioner of insurance to effectuate a valid waiver of UM coverage. Therefore, UM coverage was not effectively waived in this instance, thereby making UM coverage available equal to the liability limits of the policy. Accordingly, we affirm the decision of the court of appeal granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment.
AFFIRMED.
VICTORY, J., dissenting.
I agree with much of Justice Weimer's dissent, but would render summary judgment in favor of Western Heritage. There is no genuine issue of material fact regarding whether the form at issue was "properly completed and signed" under La. R.S. 22:680(1)(a)(ii) and plaintiff presented no evidence to rebut the presumption that the owner of the vehicle, Robert Rembert, knowingly rejected UM coverage. Further, even without the benefit of the presumption, plaintiff failed to present any evidence that Rembert did not reject UM coverage.
For the above reasons, I respectfully dissent.
WEIMER, J., dissenting.
I respectfully dissent.
I would not affirm the grant of the motion for summary judgment in favor of the plaintiff in this matter, believing there remain genuine issues of material fact and a judgment should not be rendered as a matter of law. See LSA-C.C.P. art. 966.
The record before this court reflects the insured initialed and signed a UM Coverage Form waiving UM Bodily Injury Coverage on August 16, 2002. There is no evidence to suggest that the insured disputes this fact or disputes that it was his intent to waive UM coverage. Additionally, there is no evidence to suggest the insured had multiple policies to which the waiver would apply or that he was confused in any way by the contents of the form.
There has been limited discovery in this matter. The parties filed reciprocal motions for summary judgment. There is no question a rejection form was signed waiving uninsured motorist coverage. The only issue to be decided is the consequence for failing to include the policy number in the blank provided on the form.
UM rejection "shall be made only on a form prescribed by the commissioner of insurance." LSA-R.S. 22:680(1)(a)(ii). The statute provides, in part, that "[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." Id.
Conceding for the sake of argument that the form prescribed by the insurance commissioner which does not have the policy number indicated is not "properly completed," the statute itself prescribes the consequence. Based on the words of the statute, *555 the "rebuttable presumption" that the insured knowingly rejected coverage does not apply. Based on the statutory language, if a properly completed and signed form creates a rebuttable presumption, a fortiori, a form which is not properly completed does not create the rebuttable presumption. As such, the issue must be tried to determine whether the insured rejected the coverage. The consequence or penalty for failure to properly complete the form is contained within the statutory language and should not be jurisprudentially created and imposed. According to the statute, even if the form is "properly completed," the presumption of validity can, nevertheless, be rebutted by the insured.
Clearly, the insured shares responsibility for completing the form because the insured must sign the form. It seems unjust to impose the entire penalty for the form being incomplete on the insurer which received no premium for the UM coverage. As stated, the statute does not dictate this result. It is noteworthy that the statute does not specifically require the policy number. The statutory requirements are that the form be "signed by the named insured or his legal representative" and that it "rejects coverage, selects lower limits, or selects economic-only coverage." LSA-R.S. 22:680.
It is also noteworthy that the bulletin promulgated by the insurance commissioner, LIRC 98-01, states "For indemnification purposes, the company name must be placed at the lower left-hand corner and the policy number at the lower right-hand corner of the Form." The bulletin does not state "for the rejection to be valid the policy number must be indicated."
If the insured has but one policy, the policy number is not necessary for identification purposes. In such a case, the policy number becomes irrelevant and unnecessary. Furthermore, as indicated in Bonnette v. Robles, 32,191, p. 3 (La.App. 2 Cir. 8/18/99), 740 So.2d 261, 263, there is no legal requirement that the form make reference to the policy because the form becomes part of the policy by operation of law. LSA-R.S. 22:680(1)(a)(ii).
In the majority opinion, form is being substantially elevated over substance where one is provided coverage that was apparently specifically rejected and neither bought nor paid for simply because a potentially unnecessary number is not listed on the rejection form.
I believe Judge Chehardy was correct in her dissent:
[T]he statute provides that the "properly completed" and signed form creates a "rebuttable presumption" of a valid waiver. Thus, even where the form was "properly completed," the insured could submit evidence to rebut the presumption of validity. However, the statute does not support the reverse premise as espoused by the majority's disposition, i.e., a form that is not properly complete is presumed invalid.
Duncan v. U.S.A.A. Insurance Company, 05-C-222 (La.App. 5 Cir. 1/11/2006).
I would not hold, as a matter of law, that UM coverage is mandated merely because the policy number was left blank on the rejection form prescribed by the commissioner of insurance. That consequence is not statutorily ordained. Rather, I would apply the consequence established by the statute: if the form is not "properly completed" the insurer does not benefit from the "rebuttable presumption" that the insured rejected UM coverage.[1]

*556 APPLICATION FOR REHEARING
Rehearing denied.
WEIMER, J., would grant the rehearing application.
The legislature assigned the task of confecting a form for rejecting UM coverage to the Commissioner of Insurance. LSA-R.S. 22:680. To assist in the implementation of this legislative directive, the Commissioner has also, from time to time, issued bulletins, including LIRC 98-01 which provides instruction on the UM waiver form. See Duncan v. U.S.A.A. Insurance Company, 06-0363 (La.11/29/2006), 950 So.2d 544 (Weimer, J., dissenting at p. 555 (LIRC 98-01 provides the policy number was for identification purposes, not to ensure validity of the UM rejection.)).
The attorneys who argued this case failed to direct the court's attention to a subsequently issued bulletin, LIRC 98-03. Although we did not address this bulletin, the clear language of LIRC 98-03 further corroborates my dissentplacing the policy number on the waiver form is merely for identification purposes, as opposed to a requirement for validity of the waiver form.
LIRC 98-03 was issued to "provide assistance to insurers." Significantly, the bulletin states:

Uninsured/Underinsured Motorist Bodily Injury Coverage Form  Additional Instructions
The Uninsured/Underinsured Motorist Bodily Injury Coverage Form (hereinafter "UM Form") is promulgated as required by law and is to be used with all motor vehicle liability insurance policies delivered or issued for delivery in Louisiana. The following instructions are in addition to those provided in LIRC Bulletin 98-01.
. . . .
* The policy number should be shown at the lower right-hand corner of the UM Form. In the case where a policy number is not available, the space for the policy number may be left blank or a binder number may be inserted.
It is obvious changes were made when LIRC 98-03 is compared to LIRC 98-01.[1] The instruction for inserting the policy number was changed from "must be placed" to "should be shown" in the lower right-hand corner. Additionally, insurers were advised that "the space for the policy number may be left blank" when the policy number is not available.
As indicated, the legislature delegated to the Commissioner of Insurance the responsibility to promulgate the UM waiver form. The bulletins provide instructions to insurers for proper completion of the UM form. We should consider these instructions issued by the Commissioner of Insurance regarding the form prepared by the Commissioner of Insurance. Insurers are entitled to rely on these instructions of the Commissioner in this matter. The instructions in the bulletin do not require *557 inclusion of the policy number to ensure validity of the UM waiver form.
I would grant the rehearing.
NOTES
[1] 1997 La. Acts No. 1476 amended La. R.S. 22:1406(D)(1)(a)(ii) to state:

After September 1, 1987, such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. Any form executed prior to the effective date of this Act shall be valid only until the renewal date; thereafter, the rejection, selection of lower limits, or selection of economic-only coverage shall be on a form prescribed by the commissioner of insurance as provided in this subsection.
[2] 1999 La. Acts No. 732 states in part:

The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
[3] La. R.S. 22:680 currently reads:

Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
[1] Other cases which refused to find a waiver of UM coverage invalid include: Dupuy v. Allstate Insurance Company, 05-497, p. 4 (La. App. 5 Cir. 12/27/05), 920 So.2d 244, 246; Barney v. Progressive Security Insurance Company, 03-0435 (La.App. 4 Cir. 9/24/03), 857 So.2d 1122, writ denied, 03-2931 (La.1/9/04), 862 So.2d 990; Dixon v. Gene Moody Trucking, Inc., 36,420, p. 9 (La.App. 2 Cir. 10/23/02), 830 So.2d 392, 396-397; and Jones v. Jones, 36,040, pp. 4-5 (La.App. 2 Cir. 5/8/02), 817 So.2d 454, 456, writ denied, 02-1612 (La.9/30/02), 825 So.2d 1197.
[1] A subsequent Bulletin has been issued by the Commissioner of Insurance. See LIRC 01-05 and a Clarification Notice dated December 1, 2006. I note that the UM waiver was executed August 16, 2002, and the accident occurred May 16, 2003.