7 So.3d 865 (2009)
Darwin Weymon WART, Plaintiff-Appellee,
v.
PROGRESSIVE SECURITY INSURANCE COMPANY, et al., Defendant-Appellant.
No. 43,954-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 2009.
*866 Cook, Yancey, King & Galloway, APLC by Brian Allen Homza, Robert Kennedy, Jr., Shreveport, for Defendant-Appellant, Travelers Property Casualty Co.
Nix, Patterson & Roach, LLP by Christopher R. Johnson, for Plaintiff-Appellee, Darwin Weymon Wart.
Thomas Anthony Bordelon, for Defendant-Appellee, State FarmMutual Automobile Insurance Company.
Before BROWN, WILLIAMS, GASKINS, CARAWAY and DREW, JJ.
DREW, J.
From a partial summary judgment finding that the selection of lower Uninsured/Underinsured Motorist Coverage (UM) was improperly done, Peterson Contractors, Inc., and its vehicular liability insurer, Travelers Property Casualty Company,[1] appealed. The judgment below granted the plaintiff's motion for partial summary judgment while denying Travelers' motion for partial summary judgment. Both motions concerned the validity of the UM coverage selection in the auto liability policy issued by Travelers to Peterson Contractors. For the following reasons, the judgment is reversed and this difficult matter is remanded for further proceedings.
*867 This dispute arose out of an accident which occurred on July 5, 2006, in which Darwin Weymon Wart sustained serious injuries requiring surgery. Wart stated in brief that his medical bills alone exceed $44,000, that his injuries may result in future surgery, and that he continues to have pain due to his injuries.
The accident allegedly occurred when Charity Myers ran a stop sign and pulled suddenly into the path of the Peterson Contractors truck being driven by Wart in the course and scope of his employment. Progressive, Myers' insurer, tendered the policy limits of $10,000 and was dismissed from the suit. The worker's compensation insurer settled its claim with Wart by taking the entire $10,000.
Peterson Contractors had liability insurance with UM motorist coverage applicable to Wart's injuries. Wart sought to recover damages under the UM coverage of Peterson Contractor's policy. The Travelers policy with Peterson Contractors was a single-limit[2] policy of $1,000,000 per accident. The UM form in the Peterson Contractors' policy contained a UM liability coverage selection of $30,000 per person, while the blank for selecting a lower per-accident UM limit is blank. The UM form is reproduced here as an appendix to this opinion.

DISCUSSION
Citing Duncan v. U.S.A.A. Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544, the trial court found Peterson's UM rejection form in this case was incomplete and invalid. The trial court stated, "[I]f the form is not perfectly filled out, then you don't have a proper rejection."
In Duncan, Justice Kimball explained that a motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The purpose of this favored procedure is to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Appellate courts make a de novo review of summary judgments under the same criteria that govern the district court's consideration of motions for summary judgment. A summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. In ruling on the cross motions for summary judgment, the court must determine whether either party has established there are no genuine issues of material fact and it is entitled to judgment as a matter of law.
Louisiana's strong public policy favors UM coverage which is mandated by statute. UM coverage is determined not only by policy provisions but also by applicable statutes. UM coverage will be read into the policy unless validly rejected. Because the UM statute is to be liberally construed, the statutory exceptions to coverage must be strictly interpreted. Any exclusion from coverage in an insurance policy must be clear and unmistakable. Therefore, the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. To reject UM coverage validly, the insured must express in a single document rejection of UM coverage as of a specific date in a particular policy. *868 Regardless of the insured's intention, a less precise expression is insufficient to effect a valid rejection. See discussion in Duncan, supra.
The Duncan issue was whether the UM statute required that the policy number blank on the Insurance Commissioner's form had to be filled in to effectuate a valid waiver of UM coverage. The current La. R.S. 22:1295 (formerly La. R.S. 22:680 at the time of this accident) states, in part:
[S]uch rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.
In Duncan, supra, at p. 551, Chief Justice Kimball explained:
Before we determine whether the statute requires that all aspects of the form be complied with, let us now consider what the prescribed form entails. Essentially, the prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.
The Duncan supreme court rejected the argument that the statute required only those components explicitly mentioned in the statute while others were optional or precatory. The Commissioner of Insurance required all six tasks to be performed.
As stated above, the legislature gave the commissioner of insurance the authority to create a form and stated that "such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. By failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage.
Duncan, supra, at p. 553. Justices Victory and Weimer dissented.
The supreme court reiterated its Duncan analysis in Gray v. American National Prop. & Cas. Co., XXXX-XXXX (La.2/26/08), 977 So.2d 839, 849:
We now hold that compliance with the form prescribed by the Insurance Commissioner involves more than the rote completion of the "six tasks" identified in Duncan by someone at sometime. Instead, we find that, in order for the form to be valid, the six tasks must be completed before the UM selection form is signed by the insured, such that the signature of the insured or the insured's *869 representative signifies an acceptance of and agreement with all of the information contained on the form. An insurer who is unable to prove that the UM selection form was completed before it was signed by the insured simply cannot meet its burden of proving by clear and unmistakable evidence that the UM selection form is valid.
The trial court ruled that Peterson's UM coverage decision was not clear enough to comply with controlling jurisprudence. See Duncan v. U.S.A.A., supra, and Carter v. State Farm Mutual Auto. Ins. Co., XXXX-XXXX (La.10/5/07), 964 So.2d 375. Consequently, the trial court granted Wart's motion for partial summary judgment and denied Travelers', holding that no effective downward departure election as to UM coverage occurred. The ruling was certified for immediate appeal. Travelers argued that the trial court erred in finding Peterson's UM section was invalid with the result that up to the $1,000,000 policy limit was available for recovery by Wart, depending on his proof of damages.
At the time the Peterson policy was purchased, the State of Louisiana allowed policyholders to choose whether to carry uninsured coverage with lower limits than basic liability coverage limits in the policy. The decision to choose lower UM coverage than the policy limits had to be clear and unambiguous. If a purported election for the lesser coverage is unclear, then the full policy limits would apply to UM situations.
The problem is that the state had in effect a usable UM coverage form for split-limit policies, but not for single-limit policies, such as Peterson's Travelers policy at issue here. Accordingly, at the time the representative of Peterson set out to address the issue of UM coverage, there existed no form that fit hand in glove with a single-limit policy. Thus the insured and the agent sought to make an election of lower UM limits on a form that was not designed for a single-limit policy. Travelers should not have to suffer for the state's failure to supply adequate and appropriate UM coverage forms.
Peterson's decision to elect lower limits of UM protection per person could not be more clear and unambiguous. Peterson's representative clearly opted for a UM limitation of $30,000 per person. As no aggregate UM limitation was inserted onto the form, Travelers' aggregate exposure could have been up to $1 million per accident.[3]
We quite understand the quandary of the trial court in examining this issue. The language in Duncan, supra, requires demanding and precise observance of form and procedure.[4] Notwithstanding Wart's inventive alternative theories as to other possible interpretations of this UM selection, we decline to elevate form over the triad of substance, common sense, and logic. The UM election of lower limits by Peterson was clear and unambiguous. When the UM election was made, Peterson bought and Travelers sold UM coverage of *870 $30,000 per person, but with $1 million UM coverage per accident. In our view, that is the logical way to interpret the form before this court. We suggest that insurers and policy holders in Louisiana should be assisted by the Insurance Commissioner in supplying UM election forms for both single-limit and split-limit policies.
The judgments of the trial court, granting summary judgment to Wart, and denying summary judgment to Travelers, are reversed. This matter is remanded to the trial court for further action in conformity with this opinion. All costs relative to these matters are assessed against Wart.

DECREE
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
BROWN, C.J., dissents with written reasons.
WILLIAMS, J., dissents for the reasons assigned by Brown, C.J. and assigns additional reasons.

*871 APPENDIX

BROWN, CHIEF JUDGE, dissenting.
Louisiana imposes UM coverage notwithstanding the language in the policy. Louisiana has a strong public policy favoring UM coverage. As stated by the trial court, Duncan v. U.S.A.A. Ins. Co., supra, requires that a UM rejection form must be fully completed according to statutory requirements *872 set forth in La. R.S. 22:680. In this case, the UM rejection form was not completed. See Gingles v. Dardenne, 08-2995 (La.03/13/09), 4 So.2d 799.
WILLIAMS, J., dissenting.
I respectfully dissent for the reasons assigned by my colleague and write to assign additional reasons:
LSA-R.S. 22:1295 provides, in part:
.... [A] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. (Emphasis added)
In Duncan v. USAA Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544, Chief Justice Kimball stated:
... [T]he legislature gave the commissioner of insurance the authority to create a [UM rejection] form and stated that `such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.' Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. By failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage.
Duncan, supra, at p. 553. [emphasis added]. See also, Carter v. State Farm Mutual Auto. Ins. Co., XXXX-XXXX (La.10/5/07), 964 So.2d 375; Gray v. American National Prop. & Cas. Co., XXXX-XXXX (La.2/26/08), 977 So.2d 839, 849; Gingles v. Dardenne, 08-2995, (La.3/13/09) 4 So.2d 799.
The majority opinion finds that "the language in Duncan, supra, requires demanding and precise observance of form and procedure." It then concludes "[W]e decline to elevate form over the triad of substance, common sense, and logic."
The purpose of both the legislative mandate and the rulings in the above-cited cases was to abrogate the prior procedure of our courts in interpretating the "logical" intent of the insured in executing UM coverage (and consequently, determining whether any rejection/selection was knowingly made).
Here the majority reverts back to this pre-legislative and pre-Duncan procedure, and concludes that although all of the required spaces on the form at issue were not filled out, because it was reviewing a single-limit policy and the insured "clearly" decided to obtain lower limits per person, the UM rejection form was valid. Obviously, this omission of an amount of coverage per accident could just as readily be interpreted as proof that the insured's representative did not understand the UM rejection form and thus did not knowingly waive full UM automobile liability coverage.[1]
In an attempt to further justify the validity of the partially completed UM rejection form, the majority then finds that the state had in effect a usable UM coverage rejection form for split-limit policies, but did not have a UM rejection form for single-limit policies, such as the policy at issue. The majority writes:
[A]ccordingly, at the time the representative of Peterson set out to address the *873 issue of UM coverage, there existed no form that fit glove-in-hand with a single-limit policy. Travelers should not have to suffer for the state's failure to supply adequate and appropriate UM coverage forms ... We suggest that insurers and policy holders in Louisiana should be assisted by the Insurance Commissioner in supplying Um election[sic] forms for both single-limit and split-limit policies.
Because of our state's strong public policy in favor of UM coverage, the insurer, who chose to issue automobile liability policies in this state, had the obligation to obtain a UM rejection form from the commissioner of insurance that conformed with the terms of its single-limit policy.[2] For the majority to place this obligation in any part on the public/insured, rather than completely on the insurer, belittles or ignores this state's strong public policy in favor of uninsured motorist coverage and its steadfast imposition of UM coverage notwithstanding the language of the policy.
I would affirm the trial court's judgment.
NOTES
[1] Peterson Contractors, Inc., had liability insurance with St. Paul Fire and Marine Insurance Company (subsequently purchased by Travelers, the named defendant) covering Wart's injuries.
[2] As opposed to a "split" limit policy. Either type of policy is lawful in Louisiana.
[3] Of course, to exceed the $1 million limit would have required at least 34 injured plaintiffs since the per person limit selected was $30,000. We have one injured plaintiff here.
[4] In Gingles v. Dardenne, 08-2995, (La.3/13/09), 4 So.2d 799, the supreme court considered the validity of a UM rejection form that did not contain the name of the insurance company. The Insurance Commissioner's form did not have a blank for the insurer's name but La. Bulletin LIRC 98-01 accompanying the form stated for identification purposes, the company name must be put at the lower left of the form. In a per curiam opinion, the supreme court found the rejection was valid because all the designated spaces on the form were filled out and the form satisfied all the Duncan requirements, even though the insurer's name was not on the form.
[1] The UM rejection form at issue was executed on July 1, 2006 five days before the accident, which occurred on July 6, 2006.
[2] In its supplemental brief to this court, the insurer, Travelers Property Casualty Company, notified this court of a revised UM rejection form attached to Commissioner of Insurance bulletin No. 08-02 that now provides an alternative blank for insurance agents and insureds to "clearly" indicate the lower limit for a policy with combined single limits.

Travelers argues:
Had the revised form (See Exhibit 3, UM form attached to Bulletin No. 08-02) been available to Peterson Contractors (plaintiff's employer), Peterson Contractors' representative, and Peterson Contractors' insurance agent, the plaintiff would have no perceived ambiguity to exploit in this matter. Had the revised UM form (See Exhibit #, UM form attached to Bulletin No. 08-02) been available, Peterson Contractors' representative would have simply written the number "30,000" in the blank contained in the line:
`$____ each accident/occurrence.'
This supplemental brief was submitted to our court at least seven days prior to the final distribution of the majority opinion.