STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-66

FRANK TUSON, ET AL.

VERSUS

MERLYN RODGERS, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 12-C-1808-D
HONORABLE MILDRED E. METHVIN, JUDGE PRO TEMPORE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

REVERSED AND REMANDED.

Daniel G. Brenner
R. Preston Mansour, Jr.
Bolen, Parker, Brenner, Lee &
Engelsman LTD.
P. O. Box 11590
Alexandria, LA 71315-1590
(318) 445-8236
COUNSEL FOR DEFENDANT-APPELLEE:
    National General Assurance Company

**V. Ed McGuire, III**
**Plauché, Smith & Nieset**
**P. O. Drawer 1705**
**Lake Charles, LA 70602-1705**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT-APPELLEE:**
      **Progressive Security Insurance Company**

**Donovan J. O'Pry, II**
**Jeansonne & Remondet**
**P. O. Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**COUNSEL FOR PLAINTIFFS-APPELLANTS:**
      **Frank Tuson**
      **Willard Tolliver**
      **Lorenzo Ransaw**

**Charles Brandt**
**Kyle Sherman**
**Kenneth M. Habetz, Jr.**
**Brandt & Sherman, LLP**
**111 Mercury Street**
**Lafayette, LA 70503**
**(337) 237-7171**
**COUNSEL FOR PLAINTIFFS-APPELLANTS:**
      **Keisha Harris**
      **Aleta Hayden**

**PICKETT, Judge.**

Five plaintiffs in this suit for damages resulting from an automobile accident appeal the trial court's grant of summary judgment in favor of an insurer and its denial of their cross motions for summary judgment. The trial court held that one defendant's selection of uninsured motorist (UM) coverage in an amount lower than its liability coverage was made properly and limited the UM coverage available to $100,000 for all claims arising from the accident. We reverse and remand.

## FACTS

This suit arises out of an automobile accident that occurred on October 12, 2011, in Opelousas, Louisiana. The accident occurred when a vehicle operated by Merlyn Rodgers rear-ended a vehicle operated by Crystal Bell and occupied by Frank Tuson, Willard Tolliver, Lorenzo Ransaw, Aleta Hayden, and Keisha Harris. Allstate Insurance Company (Allstate) insured the vehicle operated by Rodgers, which was owned by Shirley Kennerson. Progressive Security Insurance Company (Progressive) insured the vehicle operated by Bell, which was owned by Compass Behavioral Center of Crowley, LLC (Compass).

On April 12, 2012, Tuson, Tolliver, and Ransaw filed a Petition for Damages against Rodgers and Allstate. These plaintiffs then filed a First Supplemental and Amending Petition for Damages on April 18, 2013, alleging entitlement to UM coverage and naming Progressive as a defendant in its capacity as the UM insurer of the vehicle that Bell was driving when the accident occurred. Hayden and Harris filed a Petition for Intervention in the above action, naming Rodgers and Allstate as defendants. Thereafter, they filed a First Supplemental and Amending Petition for Intervention, alleging they were entitled to UM

coverage and naming Progressive as a defendant in its capacity as the UM insurer of the Compass vehicle. Lastly, Bell filed a Petition for Intervention then a First Supplemental and Amending Petition for Intervention, naming Rodgers, Allstate, and Progressive as defendants.

Compass purchased a combined single limit (CSL) automobile insurance policy from Progressive which provided liability coverage in the amount of $1 million. On November 28, 2007, Compass representative, Mark Cullen, executed an Uninsured/Underinsured Motorist Bodily Injury (UMBI) Coverage Form issued by the commissioner of insurance in compliance with La.R.S. 22:680. Mr. Cullen testified in his deposition that he did not recall executing the form but identified the initials and signature on the form as being his.

The second of five options provided on the form was selected by the placement of Mr. Cullen's initials in the line provided on the form. The option reads:

> I select UMBI Coverage which will compensate me for my economic and non-economic losses with limits lower than my Bodily Injury Liability Coverage limits:
>
> $ _____ each person          $ _____ each accident

The term "$100,000" was inserted in the blank preceding "each person." Additionally, the phrase "each person" was struck out, and "CSL" was handwritten over the word "person."

Progressive filed a motion for summary judgment, asserting that Compass's UMBI Coverage Form selected UMBI coverage in the amount of $100,000 "combined single limits" and that it was entitled to judgment holding that the policy it issued to Compass provided $100,000 of CSL UMBI coverage. The plaintiffs filed cross motions for summary judgment, arguing Compass's UMBI

2

Coverage Form was invalid; therefore, Progressive's policy provided $1 million in CSL coverage. In the alternative, the plaintiffs argued the Progressive policy provided $100,000 per person in combined single limit coverage.

On September 29, 2014, the trial court heard the motions for summary judgment and granted summary judgment in favor of Progressive and denied the plaintiffs' cross motions for summary judgment. The trial court concluded that Progressive's policy provided $100,000 in CSL UMBI coverage. The plaintiffs[1] appealed.

## ISSUES FOR REVIEW

The plaintiffs assign error with the trial court's grant of Progressive's motion for summary judgment and denial of their cross motions for summary judgment. Their assignments of error present the following issues for our review.

1. If the mandatory form prescribed by the Louisiana commissioner of insurance for the rejection or selection of UMBI coverage in an amount lower than a policy's liability coverage does not provide a selection for CSL coverage, is an insured's handwritten modification to the form indicating the insured's intent to select UMBI coverage in an amount lower than the policy's liability coverage valid?

2. If the selection is valid, does the insurance policy provide coverage in the amount of the lower limit per person or per accident?

## DISCUSSION

On appeal, summary judgments are reviewed de novo, using the same criteria the trial court considered when determining whether to grant summary judgment as requested. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839. Cross motions for summary judgment were filed in

---

[1] Before paying court costs, Ms. Bell dismissed her appeal.

3

this matter. Accordingly, we must "determine whether either party has established there are no genuine issues of material fact and it is entitled to judgment as a matter of law." *Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 4 (La. 11/29/06), 950 So.2d 544, 547.

The movant has the initial burden of proof to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). "[I]f the movant will not bear the burden of proof at trial," he need not "negate all essential elements of the adverse party's claim." *Id.* He must show, however, that "there is an absence of factual support for one or more elements essential to the adverse party's claim." *Id.* If the movant meets this initial burden of proof, the burden shifts to the adverse party "to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial." *Id.*

"Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment." *Cutsinger v. Redfern*, 08-2607, p. 4 (La. 5/22/09), 12 So.3d 945, 949 (citing *Bonin v. Westport Ins. Corp.*, 05-886, p. 4 (La. 5/17/06), 930 So.2d 906, 910).

Louisiana Revised Statutes 22:1295(1)(a)(i) provides that no policy of automobile liability insurance "shall be delivered or issued for delivery in this state" without UMBI coverage in an amount "not less than the limits of bodily injury liability provided by the policy." This mandate can be modified, and UM coverage "is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section." *Id.* Item (1)(a)(ii) of La.R.S. 22:1295 requires that the "rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of

4

insurance" and that "[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected [UMBI] coverage, selected a lower limit, or selected economic-only coverage."

In *Duncan*, 950 So.2d at 547 (quoting *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La.1987)), the supreme court observed that strong public policy is embodied in the UMBI coverage statute and that the statute is to be liberally construed, which "requires the statutory exceptions to coverage be interpreted strictly." For these reasons, "the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." *Id.* (quoting *Tugwell v. State Farm Ins. Co.*, 609 So.2d 195, 197 (La.1992)). Thereafter, the supreme court identified six tasks which must be performed to complete the UMBI Coverage Form prescribed by the commissioner of insurance in order to reject UMBI coverage:

> [T]he prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Duncan*, 950 So.2d at 551. Failure to comply with one of these six tasks results in an invalid rejection of UMBI coverage. *Id.* Importantly, "[t]he insurer cannot rely on the insured's intent to waive [UMBI] coverage to cure a defect in the form of the waiver." *Id.* at 553.

Before addressing the parties' arguments, we note that as a general rule, "automobile insurance policies are written with 'split' limits of liability" coverage. *Watts v. Aetna Cas. & Sur. Co.*, 574 So.2d 364, 370 (La.App. 1 Cir.), *writ denied*, 568 So.2d 1089 (La.1990) (citing W. McKenzie and H. Johnson, 15 *Louisiana*

5

*Civil Law Treatise: Insurance Law and Practice*, Section 232, p. 434 (West.1986)). Under a split limit policy, "the insurer's obligation for bodily injury is limited to a specific amount per person with a maximum amount per accident or occurrence, together with a separate limit for property damage liability coverage." *Id*. Automobile policies, like Compass's, are written differently, however, "with a 'single' (or combined) limit per accident or occurrence for liability and property damage coverage." *Id*.

The Declarations Page of the policy Progressive issued to Compass outlined coverage for Bodily Injury and Property Damage Liability as $1 million CSL. The policy sets forth Progressive's Limit of Liability for Combined Bodily Injury and Property Damage Limits, stating in pertinent part:

> [**We**] will pay no more than the Limit of Liability shown for this coverage on the **Declarations Page,** subject to the following:
>
> . . . .
>
> **2. Combined Bodily Injury and Property Damage Limits**
>
> Subject to the terms of Section 1 above, if **your Declarations Page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **Declarations Page.**

Progressive argues that Mr. Cullen completed the six tasks required by *Duncan* when he completed the UMBI Coverage Form; therefore, its policy only provides $100,000 in UMBI coverage for the accident. The plaintiffs argue the waiver is invalid and that the only evidence Progressive can use to prove a valid rejection of UM coverage is contained within the four corners of the UMBI Coverage Form executed by Mr. Cullen. The plaintiffs urge that Progressive has

6

failed to show a valid selection of lower limits was effected because: (1) the form was altered when the phrase "each person" was stricken and "CSL" was inserted above those terms; (2) "CSL" is not defined on the UMBI Coverage Form; and (3) the blank preceding "each accident" was left blank. The UMBI Coverage Form prohibits alteration of the form. It states: "This form may not be altered or modified."

Progressive relies on *Wart v. Progressive Security Insurance Co.*, 43,954 (La.App. 2 Cir. 4/8/09), 7 So.3d 865, *writ denied*, 09-1058 (La. 9/4/09), 17 So.3d 963, to support its motion for summary judgment. In *Wart*, as here, the UM rejection at issue pertained to a CSL policy. The insured's representative in *Wart* selected the same option on the UMBI Coverage Form that Mr. Cullen selected; however, he wrote in $30,000 before "each person." No other changes were made to the form.

The trial court concluded in *Wart*, as the plaintiffs argue here, that the form did not comply with the requirements of *Duncan*, 950 So.2d 544, and *Gray*, 977 So.2d 839, because it was not filled out as required by the commissioner of insurance's directives. The second circuit disagreed with the trial court, explaining:

> At the time the Peterson policy was purchased, the State of Louisiana allowed policyholders to choose whether to carry uninsured coverage with lower limits than basic liability coverage limits in the policy. The decision to choose lower UM coverage than the policy limits had to be clear and unambiguous. If a purported election for the lesser coverage is unclear, then the full policy limits would apply to UM situations.

> The problem is that the state had in effect a usable UM coverage form for split-limit policies, but not for single-limit policies, such as Peterson's Travelers policy at issue here. Accordingly, at the time the representative of Peterson set out to address the issue of UM coverage, there existed no form that fit hand in glove with a single-

7

limit policy.  Thus the insured and the agent sought to make an election of lower UM limits on a form that was not designed for a single-limit policy.  Travelers should not have to suffer for the state's failure to supply adequate and appropriate UM coverage forms.

Peterson's decision to elect lower limits of UM protection per person could not be more clear and unambiguous.  Peterson's representative clearly opted for a UM limitation of $30,000 per person.  As no aggregate UM limitation was inserted onto the form, Travelers' aggregate exposure could have been up to $1 million per accident.

We quite understand the quandary of the trial court in examining this issue.  The language in *Duncan*, *supra*, requires demanding and precise observance of form and procedure.  Notwithstanding Wart's inventive alternative theories as to other possible interpretations of this UM selection, we decline to elevate form over the triad of substance, common sense, and logic.  The UM election of lower limits by Peterson was clear and unambiguous.  When the UM election was made, Peterson bought and Travelers sold UM coverage of $30,000 per person, but with $1 million UM coverage per accident.  In our view, that is the logical way to interpret the form before this court.  We suggest that insurers and policy holders in Louisiana should be assisted by the Insurance Commissioner in supplying UM election forms for both single-limit and split-limit policies.

*Wart*, 7 So.3d at 869-70 (footnotes omitted).

Contrary to *Wart*, Mr. Cullen did not simply fill in a blank indicating the selection of lower UMBI limits.  Instead, the UMBI Coverage Form was altered when "per person" was struck and "CSL" was inserted above "person."  Moreover, Mr. Cullen did not initial the alteration of the form to verify that he made the alteration.  Most importantly, however, there was no need for the form to be modified because pursuant to the terms of Progressive's policy, the policy's CSL coverage was "per accident" not "per person."  Therefore, Mr. Cullen needed only to insert $100,000 in the blank before "each accident" to make a valid selection of lower UMBI coverage per accident in the amount of $100,000.

For these reasons, we find that Compass's completion of the UMBI Coverage Form was invalid. Accordingly, we reverse the judgment of the trial court granting summary judgment in favor of Progressive and denying the plaintiffs' cross motions for summary judgment. Summary judgment is hereby granted in favor of the plaintiffs.

## DISPOSITION

The judgment of the trial court granting summary judgment in favor of Progressive Security Insurance Company and denying summary judgment in favor of the plaintiffs is reversed. Judgment is granted in favor of the plaintiffs, holding: (1) Compass's selection of UMBI coverage in the amount of $100,000 per accident was invalid and (2) Progressive's policy of insurance issued to Compass provides UMBI coverage in the amount of $1 million per accident. The matter is remanded for further proceedings consistent with this opinion. All costs of this appeal are assessed to Progressive Security Insurance Company.

**REVERSED AND REMANDED.**