WILLIAMS, J.
| plaintiff, Kathy Denise Johnston, appeals a district court’s judgment denying her motion for partial summary judgment and granting summary judgment in favor of defendant, NOE Corporation, LLC. For the following reasons, we affirm.
FACTS
The decedent, Samuel Johnston, Jr., was a legally blind employee of the Louisiana Center for the Blind in Ruston, Louisiana. He served as an apartment manager and a mentor for the students living in the school’s apartments. Gina Koons[1] was a legally blind student attending the Louisiana Center for the Blind, and she resided in the apartments managed by the decedent. On April 23, 2007, Gina called her mother, Jeanine Koons, and told her that she had been sexually assaulted. After this telephone conversation, Jeanine drove from Mobile, Alabama to Ruston, and reported the allegations to the Ruston Police Department. Gina identified the decedent as her assailant and told the responding police officers that the decedent had sexually assaulted her by touching her genitals and breast area. Gina was transported to a local hospital for an examination.
Police officers picked the decedent up and transported him to the police department. The decedent was advised of his Miranda rights and questioned for several hours. The decedent voluntarily provided DNA samples and submitted to being photographed. He was not arrested.
At some point, Jeanine called KNOE TV-8 news to report the allegations. After speaking with Jeanine, Mike McDaniel, a reporter with |2TV-8 news, contact *737 ed the Ruston Police Department, which confirmed that the allegations had been reported and that an investigation was ongoing. McDaniel drove to Ruston and interviewed Gina and Jeanine. During the interview, Jeanine and Gina identified the decedent as the assailant. McDaniel also spoke with police officers and requested a copy of the initial police report. Lt. Curtis Hawkins provided McDaniel with a redacted copy of the report which did not include the decedent’s name; the decedent was identified only as “an employee” of the Louisiana Center for the Blind. Further, Lt. Hawkins discouraged McDaniel from reporting the allegations because the investigation was ongoing, no charges had been filed and no arrest had been made. At some point, McDaniel also contacted the Louisiana Center for the Blind to confirm the decedent’s employment. McDaniel was told that the decedent was employed there, but he had been placed on leave pending an investigation.
Thereafter, TV-8 news aired a report of the allegations on the 10:00 p.m. news; the report was aired again the following morning. The news report included the decedent’s name,[2] information that had been obtained from the police department, and recorded statements from Gina and Jeanine. The transcript of the broadcast reads as follows:
NEWS ANCHOR: New at Ten o’clock: A Ruston man is accused of sexually assaulting a student at the Louisiana Center [for] the Blind. And the student claims this is not the first time she’s had a problem with the accused attacker. TV8’s Mike McDaniel has the exclusive story. And be | ?,advised that it includes graphic language of a sexual nature. It is not suitable for children, and some adults may find the description disturbing.
MCDANIEL: Gina Koons is legally blind and holds tightly to a stuffed lion. At 4 feet 5 inches tall, this 20 year old is a new student at the Louisiana Center for the Blind in Ruston.
Coming from Mobile, Alabama, Gina wanted to learn a life of independence, but after only a month of living in her new apartment, Gina says her sense of independence was shattered early Monday Morning.
GINA: He started rubbing up and down my leg, in between my private area and jabbing his fingers in my private area.
MCDANIEL: The ‘he’ she speaks [of] is her apartment manager, Sammy Johnson Junior, who is also legally blind. Gina says this all started when she locked her keys inside her apartment. Her roommate wasn’t home so Gina called Johnson who had master keys to each apartment.
But before Johnson arrived, Gina’s roommate came to let her in.... A few minutes later, Johnson showed up.
GINA: He came in but he did not knock nor [sic] ring the doorbell and I knew it was him because I said ‘Sammy?’ And he responded.
MCDANIEL: Once Johnson entered the apartment, Gina asked for help with an ice pack because she sprained her ankle earlier in the day.
GINA: So he told me to lay [sic] down in my bed, so he could help put some ice on my ankle.
MCDANIEL: That’s when Gina says the touching began, first her legs, then *738 between them. Gina says it didn’t stop there.
GINA: And rubbing on my breast area and he put his mouth on my breast area[.] I had teeth marks. What was going through your mind? ... I was confused, I was fighting to get away.
[4MCDANIEL: Gina says she was going to remain quiet, but about an hour later, she finally called her mother.
[[Image here]]
MCDANIEL: Police took Gina to the hospital to be examined.... Koons says she made several formal complaints against Johnson, here at the apartment complex in the past, claiming he would follow her around and would even enter her apartment without her permission.
[[Image here]]
NEWS ANCHOR: When we contacted Ruston Police, TV-8 news was told the alleged incident is still under investigation. The Louisiana Center for the Blind confirms Johnson worked at the Center for about a year and a half, and is now on leave, pending an investigation.
Johnson has not been arrested or charged with any crime.
⅜ * *
After the story aired, the decedent hanged himself. Plaintiff discovered the decedent’s body the following morning.
On March 14, 2008, plaintiff filed a lawsuit against NOE Corporation, LLC, the operator of TV-8 news, alleging defamation and false light invasion of privacy.[3] Defendant answered the suit and admitted to airing the report of the allegations against the decedent; however, defendant denied any liability for the decedent’s suicide. Thereafter, plaintiff moved for partial summary judgment, arguing that she was entitled to a judgment, as a matter of law, on the issues of defamation and false light invasion of privacy. In response, defendant moved for summary judgment, seeking the dismissal of plaintiffs claims.
On January 20, 2011, the district court denied plaintiffs motion for partial summary judgment, and granted summary judgment in favor of | ¡¡defendant. The court stated:
Essentially, this court finds — and—concludes that (as a matter of law), the particulars of The Florida Star [v. B.J.F., 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) ] case supports Defendant’s position and — thus—Defendant should — and—does hereby prevail. Plaintiffs case is [djismissed.
Plaintiff appeals.
FACTS
Plaintiff contends the district court erred in denying her motion for partial summary judgment and granting summary judgment in favor of defendant. Plaintiff argues that the district court erroneously relied on The Florida Star v. B.J.F., 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) because the facts of that case are distinguishable from the instant case. Plaintiff does not dispute that KNOE TV-8 accurately reported the statements provided by Gina and Jeanine Koons. Rather, plaintiff argues that the reporter should have ascertained that the statements were true prior to broadcasting the story.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Duncan v. USAA Ins. Co., *739 2006-363 (La.11/29/06), 950 So.2d 544; See also LSA-C.C.P. art. 966. Appellate courts review summary judgments de novo, while considering the record and all reasonable inferences drawn from the record in the light most favorable to the non-movant. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764; Austin v. Bundrick, 41,064 (La.App.2d Cir.6/30/06), 935 So.2d 836. Summary judgment is warranted |fionIy if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(C)(1).
The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he or she will be able to satisfy his or her evi-dentiary burden of proof at trial, then there is no genuine issue of material fact. Id.
In the instant case, in granting defendant’s motion for summary judgment, the district court cited The Florida Star, supra. In that case, the plaintiff reported to the sheriffs department that she had been sexually assaulted. The sheriffs department prepared a report of the incident, which mistakenly identified the plaintiff by her full name. A reporter-trainee employed by the defendant newspaper copied the sheriffs report verbatim, including the plaintiffs full name. An article was prepared and published in the newspaper; the plaintiffs full name was included in the article. The plaintiff filed a lawsuit against the sheriffs department and the newspaper, alleging that both defendants had violated a Florida state statute by publishing her name. The newspaper filed a motion to dismiss the claims, arguing that imposing civil liability upon the newspaper violated the First |7Amendment to the United States Constitution. The trial court ruled in favor of the plaintiff, finding that the newspaper was negligent per se because it had violated the Florida statute; damages were awarded. The court of appeal affirmed. The United States Supreme Court granted certiorari and reversed, holding that “imposing damages on [the newspaper] for publishing [the plaintiffs] name violates the First Amendment[.]” Id. at 491 U.S. at 532, 109 S.Ct. 2603.[4] The court stated:
[W]here a newspaper publishes truthful information which it has lawfully obtained, punishment may lawfully be imposed, if at all, only when narrowly tailored to a state interest of the highest orderf.]
Id., 491 U.S. at 541, 109 S.Ct. at 2613.
Our de novo review of the record in the instant case reveals that plaintiff did not allege that the news reporter misrepresented the facts. Rather, plaintiff alleged that Gina Koons made false allegations to the police and the reporter. Our review of the record reveals that the information reported by TV-8 contained an accurate account of the statements Gina and Jeanine made to the police officers and the TV-8 news reporter. The news reporter contacted the Ruston Police Department and confirmed that Gina and Jeanine had *740 reported the allegations against a suspect, and that a criminal investigation was ongoing. The reporter also contacted the Louisiana Center for the Blind which confirmed the | «decedent’s employment at the Center and informed the reporter that the decedent had been placed on leave pending an investigation.
We note that the reporter did not state that the decedent had been arrested or that the allegations against the decedent were true. Rather, he reported, pursuant to a police report, that allegations had been made against the decedent. The broadcast was filled with statements such as “a Ruston man is accused ...“the student claims ...;” “Gina says ...;” and “Koons says....” Additionally, the news anchor concluded the broadcast by stating, “[T]he alleged incident is still under investigation” and “Johnson has not been arrested or charged with any crime.” Moreover, plaintiff has submitted no evidence to establish that the allegations made by Gina, and reported by TV-8 news, were not truthful. DNA testing showed that there was “no male DNA present” in the samples taken from Gina’s rape kit. However, Gina never alleged that the decedent had raped her. Rather, Gina reported that the decedent had touched her leg, “private area,” “breast area” and had “jabb[ed] his fingers in [her] private area.”
We also find that the information published by TV-8 news was not illegally obtained. The information was voluntarily provided by Gina and Jeanine Koons. Thereafter, the police department confirmed that the allegations had been reported, and a criminal investigation was ongoing. Although the redacted police report identified the alleged assailant as “an employee” of the Louisiana Center for the Blind, the news reporter lawfully obtained the decedent’s name from Gina, the alleged victim.
Furthermore, the news report concerned a matter of public Insignificance, and the imposition of civil liability on the news station is not necessary to “further a state interest of the highest order.” The news report involved the alleged commission and investigation of a serious crime— a sexual assault — which had been reported to the authorities. In The Florida Star, supra, the Supreme Court concluded that imposing damages on the newspaper for publishing the name of a victim constituted a violation of the First Amendment. Here, the decedent was not the victim of an alleged sexual assault; he was the alleged assailant. We have found no existing case law or statutory authority which prohibits the press from publishing the name of the alleged suspect or the facts surrounding an investigation of the commission of a crime. To the contrary, LSA-C.C.P. art. 971[5] provides for |ina special *741 motion to strike when the subject matter is of public interest.
CONCLUSION
For the reasons set forth herein, we affirm the summary judgment in favor of defendant, NOE Corporation, LLC. Costs of the appeal are assessed to appellant, Kathy Denise Johnston.
AFFIRMED.

. In some portions of the record, Gina Koons’ name is spelled, “Jina Koons.”

. Throughout the report, the decedent is referred to as “Sammy Johnson, Jr.” or "Johnson.”

. The petition was later amended to add the decedent’s two daughters as plaintiffs.

. The First Amendment to the United States Constitution provides, in pertinent part:
Congress shall make no law ... abridging the freedom of speech, or of the press[.]

. LSA-C.C.P. art. 971 provides, in pertinent part:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.
[[Image here]]
F. As used in this Article, the following terms shall have the meanings ascribed to *741 them below, unless the context clearly indicates otherwise:
(1)"Act in furtherance of a person’s right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue” includes but is not limited to:
(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
(2) "Petition” includes either a petition or a reconventional demand.
(3) "Plaintiff” includes either a plaintiff or petitioner in a principal action or a plaintiff or petitioner in reconvention.
(4) "Defendant” includes either a defendant or respondent in a principal action or a defendant or respondent in reconvention.