STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-1061

JOHN K. SCARBOROUGH AND
RENEA SCARBOROUGH,
INDIVIDUALLY, AS MARRIED
PERSONS AND ON BEHALF OF
THEIR MINOR CHILDREN,
JOHN KEVIN SCARBOROUGH
AND PATRICK CODY SCARBOROUGH

VERSUS

CAROL A. RANDLE AND GENERAL
INSURANCE COMPANY OF AMERICA

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT
PARISH OF RAPIDES, NO. 231,845, DIVISION "F"
HONORABLE GEORGE C. METOYER, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.

AFFIRMED.

**Barry Ray Laiche**
**Patrick B. Sadler**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel**
**237 S. Washington Street**
**Marksville, Louisiana 71351**
**(318) 445-3631**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
      **John K. Scarborough and Renea Scarborough,**
      **Individually, as Married Persons and on Behalf of**
      **their Minor Children, John Kevin Scarborough and**
      **Patrick Cody Scarborough**

**H. Minor Pipes, III**
**Susan M. Rogge**
**Kristen L. Beckman**
**Barrasso Usdin Kupperman Freeman & Sarver, L.L.C.**
**909 Poydras Street, Suite 2400**
**New Orleans, Louisiana 70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **General Insurance Company of America**

**David T. Butler, Jr.**
**Funderburk & Butler**
**Attorneys at Law**
**1111 South Foster Drive, Suite G**
**Baton Rouge, Louisiana 70806**
**(225) 924-1000**
**COUNSEL FOR INTERVENOR/APPELLEE:**
      **Bridgefield Casualty Insurance Company**

**GENOVESE, Judge.**

Plaintiffs, John Scarborough and Renea Scarborough, individually, and on behalf of their minor children, John Kevin Scarborough and Partrick Cody Scarborough, appeal the trial court's grant of a Motion for Summary Judgment filed by Defendant, General Insurance Company of America, dismissing their claims. Intervenor, Bridegfield Casualty Insurance Company, answers the appeal, and also seeks a reversal of the grant of summary judgment which dismissed its claim in intervention. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This action stems from a February 25, 2008 automobile accident that occurred when John Scarborough, driving a van owned by his employer, Medical Technology of Louisiana, Inc. (Medical Technology), and insured by General Insurance Company of America (GICA), was rear-ended by Carol A. Randle. The Scarboroughs filed suit against Ms. Randle, who was uninsured, and GICA for uninsured/underinsured motorist (UM) benefits. Bridgefield Casualty Insurance Company (Bridgefield), Medical Technology's workers' compensation insurer, intervened in subrogation for the workers' compensation benefits it paid to Mr. Scarborough.

The Scarboroughs and GICA filed cross-motions for summary judgment on the issue, vel non, of UM coverage under GICA's policy. GICA contended that the amount of UM coverage under the policy was $100,000.00. In opposition, the Scarboroughs argued that UM coverage in an amount equal to the liability limits of $1,000,000.00 was available to them by operation of law, because GICA had not produced a valid and enforceable UM rejection form prescribed by the commissioner of insurance. The trial court denied the Scarboroughs' Motion for Summary Judgment and granted GICA's Motion for Summary Judgment, finding

UM coverage had been validly rejected. The Scarboroughs appealed, and Bridgefield answered the appeal.

## ASSIGNMENTS OF ERROR

On appeal, the Scarboroughs assert that "[t]he [d]istrict [c]ourt committed reversible error by granting [GICA's] Motion for Summary Judgment as there exist[] genuine issues of material fact sufficient to prevent [GICA] from being entitled to judgment as a mater of law." Bridgefield joins in this assertion.

## LAW AND DISCUSSION

The Scarboroughs seek a de novo review of the record to determine if the trial court erred in granting GICA's Motion for Summary Judgment. A de novo review is the proper standard of review in a summary judgment case where there are contested issues of fact. *Guillot v. Guillot*, 12-109 (La.App. 3 Cir. 6/6/12), 92 So.3d 1212. However, "[i]n a case where there are no contested issues of fact, and the only issue is the application of the law to the undisputed facts, . . . the proper standard of review is whether or not there has been legal error." *Tyson v. King*, 09-963, p. 2 (La.App. 3 Cir. 2/3/10), 29 So.3d 719, 720 (quoting *Bailey v. City of Lafayette*, 05-29, p. 2 (La.App. 3 Cir. 6/1/05), 904 So.2d 922, 923, *writs denied*, 05-1689, 05-1690, 05-1691, and 05-1692 (La.1/9/06), 918 So.2d 1054, 1055, and the cases cited therein). In this case, the facts are not in dispute. Therefore, the proper standard of review is whether the trial court's grant of summary judgment constituted legal error.

In 2006, the statute governing the form for rejecting UM coverage was La.R.S. 22:680.[1] At the applicable time, La.R.S. 22:680 read, in pertinent part:

---

[1] The original UM/UIM statute was numbered La.R.S. 22:1406. It was redesignated as La.R.S. 22:680 by 2003 La. Acts No. 456, § 3, and it has since been renumbered as La.R.S. 22:1295.

The following provisions shall govern the issuance of uninsured motorist coverage in this state:

(1)(a)(i)  No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section.  In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized herein.  Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.  The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract.  Insurers may also make available, at a reduced premium, the coverage provided under Section with an exlusion for all noneconomic loss.  This coverage shall be known as "economic-only" uninsured motorist coverage.  Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.

(ii)  Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.  The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative.  The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.  A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.  The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new

selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

Additionally, our supreme court in *Duncan v. U.S.A.A. Insurance Co.*, 06-363 (La. 11/29/06), 950 So.2d 544, enumerated specific requirements for there to be a valid waiver of UM/UIM coverage. In this case, it is undisputed that the *Duncan* requirements were fulfilled; however, the Scarboroughs argue that the form titled "Louisiana Auto Supplement" is insufficient to constitute a valid UM/UIM rejection form since it was not prescribed by the commissioner of insurance. We disagree.

The document executed in this case is the same as the form prescribed by the commissioner of insurance except that it omits the two-line header, "**State of Louisiana**[,]" followed by: "This form was promulgated pursuant to LRS 22§1406.D.(1)(a)(ii). This form may not be altered or modified." In all other respects, the Louisiana Auto Supplement form is identical to the commissioner's form and contains the exact same substance and wording.

In *Lachney v. Hanover Insurance Co.*, 04-2316 (La.App. 1 Cir. 11/4/05), 927 So.2d 380, *writ denied*, 05-2432 (La. 3/24/06), 925 So.2d 1238, the first circuit considered the exact issue that is presently before this court. In *Lachney*, the plaintiffs argued that the same "magic words" were omitted from the UM rejection form, thereby rendering the rejection invalid. Though the form in *Lachney*

4

contained additional other deviations, the *Lachney* court held that the rejection was valid and enforceable, reasoning as follows:

> After carefully reviewing the UM selection/rejection form signed on July 27, 2001, by the president and legal representative, we conclude that the method of rejecting and/or selecting UM coverage satisfies the statutory requirements. The form clearly states that the policy will include UMBI coverage at the same limits as bodily injury liability coverage unless requested otherwise. The form clearly informs the insured that it can select UM coverage in an amount equal to the bodily injury limits of the policy, or an amount that will compensate for economic and non-economic losses with limits lower than the bodily injury liability coverage.

> Although not exactly on point with this case, in *Jones v. Jones*, 36,040 (La.App. 2 Cir. 5/8/02), 817 So.2d 454, the court ruled that even though the prescribed form requires that the insurance company name and policy number be included on the UM form, this omission should not invalidate an otherwise valid form because it was clear that the insured wanted to reject UM coverage. Here, despite a number of technical errors, it is clear that the insured intended to choose UM coverage in a lesser amount than the liability policy limits. The form employed comports in every substantial way with the required statutory form.

> Further, Blacks Law Dictionary (8th ed.2004) provides that "prescribe" means to dictate, ordain, direct or to establish authoritatively (as a rule or as a guideline). It defines "promulgate" as to declare or announce publicly; to proclaim; to put a law into force and effect. These words are not synonymous. Thus, even though plaintiffs argue that the exact form promulgated by the Commissioner of Insurance was not used, they introduced no evidence to show that every word, including the superfluous language, was required by the Commissioner to make the form valid.

*Id.* at 382.

Our supreme court declined to apply a hypertechnical interpretation of the *Duncan* requirements in *Banquer v. Guidroz*, 09-466 (La. 5/15/09), 8 So.3d 559. In *Banquer*, the plaintiffs also argued the invalidity of a UM rejection based upon the form containing the signature without the printed name of the legal representative of the corporate insured. Considering this issue, the first circuit stated, "[A]s compliance with the form prescribed by the commissioner of insurance is necessary for the UM form to be deemed valid, see *Duncan*, 06-363 at

5

14, 950 So.2d at 553, the ACE form must be deemed invalid for failure to include the printed name of the person who signed the form." *Banquer v. Guidroz*, 08-356, pp. 6-7 (La.App. 1 Cir. 12/23/08), 5 So.3d 206, 210. The supreme court granted writs and reversed, finding that the *Duncan* requirements had been satisfied. Notably, as pointed out in the dissent to the first circuit opinion, that form also contained a "clerical error" in omitting a word; yet, the supreme court found the rejection to be valid. *Id.* at 211.

Based upon the foregoing, we find no legal error in the trial court's grant of GICA's Motion for Summary Judgment. The enumerated requirements of *Duncan* were undisputedly fulfilled. Although the language advising of the prohibition against altering or modifying the form is absent, the form used in this case was not altered or modified. The form is otherwise identical to that of the insurance commissioner and constitutes a valid and enforceable waiver of UM coverage.

The Scarboroughs also argue that "the wrong 'named insured' is printed as the named insured on the UM rejection form" thereby rendering it invalid. They assert in brief that "[t]he correct name of the insured entity is actually 'Medical Technology of Louisiana, Inc.[,']" which changed to 'Medical Technology of Louisiana, LLC' on October 24, 2007." Given that the name appearing on the UM form was written as "Medical Technology of La. Inc.[,]" they conclude that the waiver is invalid. We find no merit to this contention.

GICA's policy and the UM rejection form both consistently identify the named insured as "Medical Technology of La., Inc." The affidavit of the company representative who executed the UM/UIM form, Mr. Elton Glynn Beebe, Jr., states that as the "legal representative of the Company, in 2006, [he] had the authority to make insurance decisions for the Company, and was authorized to accept, reject, or select lower liability limits of uninsured motorist coverage on behalf of the

6

Company." Mr. Beebe attests that he had authority "to sign uninsured motorist selection forms on behalf of the Company" and "was authorized to legally bind the Company." Finally, he confirms that the UM form at issue in this case was executed by him "on behalf of the Company in 2006" and that "[i]t is, and always was, at all times relevant to this claim, the Company's intention to only have $100,000.00 of UM coverage on its Auto Policy."

There is no material discrepancy as to the indentification of the named insured on GICA's policy and the UM form. The name, "Louisiana Medical Technology of Louisiana, Inc.[,]" is consistently abbreviated on both the policy and the UM rejection form signed by Mr. Beebe as "Technology of La. Inc." We agree with GICA that "[t]he sole fact that there was a slight difference in the full spelling of 'Louisiana' on the affidavits versus on the policy and the waiver form does not serve as a basis to invalidate the form."

### DECREE

For the foregoing reasons, the trial court's grant of summary judgment in favor of Defendant, General Insurance Company of America, dismissing the claims of Plaintiffs, John Scarborough and Renea Scarborough, individually, and on behalf of their minor children, John Kevin Scarborough and Patrick Cody Scarborough, and the claims of Intervenor, Bridgefield Casualty Insurance Company, is affirmed. All costs of these proceedings are assessed equally to the Plaintiffs and the Intervenor.

**AFFIRMED.**