Conery, J.,
concurs in the result and assigns reasons.
I concur with the result reached by the majority. The majority’s opinion concluded:
Therefore, when O’Neal’s umbrella policy limit increased from $2 million to $3 million in 2009, a new UM waiver was required for that umbrella policy. The commercial auto policy did not require a new UM waiver at that time, however, because it provided $1 million coverage from time of its inception through the date of the accident. Accordingly, we find that the increase in O’Neal’s umbrella policy limits did not require a new UM waiver for its commercial auto policy ...
Although the auto policy and umbrella policy are two separate policies, unless UM coverage is waived, both would combine to provide coverage to the insured, in this case the Penn Millers driver, Mr. Hayes. The auto limit coverage in the amount of $300,000 remained the same from 2007-2013, the date of the accident. Hence the majority is correct that a new UM waiver for the auto policy was not required.
*1287 The umbrella policy limits were increased in 2009, hence the combined limits in the auto and UM policies provide new overall underinsured motorist limits in case of a covered motor vehicle accident as here. I would find that a new UM waiver was required when the umbrella limits were increased in 2009, in [¡.keeping with the requirements of the statute, La.R.S. 22:1295.1(a)(ii) effective January 1, 2011 which stated:
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
I would respectfully submit that a discussion of whether the 2007 UM waiver was still valid -is no longer at issue because a new UM waiver was actually signed in 2011, after the combined underinsured motorist limits were effectively increased in 2009 by an increase in umbrella coverage for a covered motor vehicle underinsured motorist claim. We need decide only whether the 2011 UM waiver was valid, as regardless of whether a new UM waiver was required in 2009 after the umbrella limits were increased, it is undisputed that in fact a new UM waiver was signed in 2011.
| ¡¡Plaintiff and Progressive, appellees, challenge the 2011 waiver alleging noncompliance with the commissioner’s waiver form, LDOl Bulletin No. 08-02, effective on or after January 1, 2010. The new UM waiver form replaced the UM form issued with Bulletin LIRC 98-1, which had failed to include a space on the form for the name of the insurer. The applicable statute was amended and became effective on January 1, 2011. It continued to empower the State Insurance Commissioner to develop a form for waiver of UM coverage and mandated that all insurance carriers use that form should a client wish to waive UM coverage.
*1288 Appellees argue that the 2011 UM waiver is invalid because the name or logo of the insurer was not inserted properly on the commissioner’s form as required by the following language in LDOI Bulletin No. 08-02:
•POLICY NUMBER AND OTHER POLICY IDENTIFICATION INFORMATION—The revised UM form includes two boxes on the lower right hand corner of the form.
*The upper box contains an area that the insurer may use for policy information purposes (e.g. policy number, binder number, application number, etc.) The box does not need to be filled in for the form to be properly completed.
*The lower box must contain one of the following: the individual company name, the group name, or the insurer’s logo. (Emphasis added.)
It is undisputed that the company name, group name, or logo was not included in a “box on the lower right hand corner of the form.” However, as pointed out by defendant/appellants, the waiver is identified with the company logo and the word ACORD, the company’s group name, on the first page. In fact “ACORD” is printed at the bottom of the five page form on every page. The name of the insured, the insurer, and the policy number are also clearly included on the waiver form on page one, along with Mr. O’Neal’s initials clearly rejecting UM | ¿coverage. I would find that the 2011 UM waiver is a valid waiver, despite the lack of a logo or name of the insurer in the “lower box” on page four (4) of the 2011 waiver form executed and initialed by the insured, Mr. O’Neal.
It is clear that the underlying purpose of the inclusion of the name or logo is to provide notice to the insured of the name of the carrier providing coverage on the UM waiver form itself, without looking anywhere else. Again, the 2011 waiver form included on page one the name of the insured, O’Neal’s Feeder Supply, Inc., the name of the carrier, Penn Millers Insurance Company, and the Policy Number PAC280371604, all clearly typed on the first page of the UM waiver Form. The company logo and company name, ACORD, are clearly included and the ACORD name appears on the bottom of every page of the form.
Considering the foregoing, there is no evidence to suggest that the insured, Mr. O’Neal, did not intend to waive UM coverage, or was confused by the form. There is uncontradicted evidence in this summary judgment case that Mr. O’Neal intended to and did waive UM coverage by initialing and signing the 2011 UM waiver form. Therefore I would find the 2011 waiver comports with the requirements of the commissioner and meets the requirements for a valid UM waiver pursuant to La.R.S. 22:1295.1(a)(ii), effective January 1, 2011, and Duncan v. U.S.A.A. Ins. Co., 06-544 (La. 11/29/06), 950 So.2d 544.
In Gingles v. Dardenne, 08-2995 (La. 3/13/09), 4 So.3d 799, the supreme court found in favor of the insurer, despite its failure to complete the UM rejection form with the name of the company in the lower left hand corner as required by Bulletin LIRC 98-01 then in effect. Ashmore v. McBride, 09-80 (La.App. 3 Cir. 6/3/09), 11 So.3d 720, followed Gingles and found the failure of the insurer to | fiplace its name in the lower left hand corner of the UM rejection form did not invalidate the chent’s rejection of UM coverage.
In Alvarez v. LeBlanc, 09-417 (La.App. 5 Cir. 1/26/10), 31 So.3d 1120, our sister circuit likewise found that failure to include the name of the insurer on the lower left hand corner of the UM waiver did not render the UM form invalid, following Gingles and Duncan.
In Scarborough v. Randle, 12-1061, p. 5 (La.App. 3 Cir. 2/6/13), 109 So.3d 961, 965, a panel of our court found the UM waiver *1289 form entitled “La Auto Supplement” was a valid UM rejection form, following the supreme court decision in Banquer v. Guidroz, 09-466 (La. 6/16/09), 8 So.3d 559, which “declined to apply a hypertechnical interpretation of the Duncan requirements.” In Banquer, the supreme court found a valid waiver of UM coverage based on a UM waiver form “containing the signature without the printed name of the legal representative of the corporate insured.” Scarborough, 109 So.3d at 965.
In Nova Cas. Co. v. Guy’s Towing Serv., Inc., 2015 WL 3463646, a federal district court case applying Louisiana law, the trial court found a valid UM waiver when the policy number was not placed on one page of the form. The court stated the “form appears to comply with the requirements of the less-than-precise language of La. Rev.Stat. § 22:1295(1)(a)(ii), and with the instruction of Duncan.” Id at p. 7.
I would, therefore, find that the 2011 UM waiver was valid.
The Multiple “Application” New Policy Issue.
The accident occurred in 2013 and was covered by the 2013 policy renewal. Appel-lees argue that regardless of whether the 2011 UM waiver was valid, the 2013 policy covering this accident was not a “renewal” and was in fact a “new” Impolicy because Penn Millers required the insured to sign a new “application” for insurance coverage every year. Hence a new UM waiver was required each year and Penn Millers could not rely on the 2011 waiver. A new “application” would normally mean that each year Penn Millers and O’Neal’s engaged in negotiations culminating in the issuance of a “new policy” with new terms and conditions and coverage limits.
In this case, I would find that the “application form” was in effect, a renewal of existing coverages. The umbrella policy limits, which were changed in 2009 from $2 million to $3 million, were not changed in 2011, 2012, or 2013. As previously stated, the underlying auto liability limits remained unchanged since 2007. The majority correctly summarized the uncontradict-ed evidence on this issue and concluded: “This evidence establishes that Penn Millers renewed O’Neal’s commercial auto policy each year and did not issue a new policy each year.”
CONCLUSION
I concur in the result, finding that O’Neal properly rejected UM coverage, but on the basis that the 2011 uninsured motorist waiver was a valid waiver and applied on the date of the accident in 2013. The policies were renewed in 2012 and 2013 and were not “new” policies requiring new UM rejection forms.