# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**19-530**

**DARIUS TROY BARRAS AND**

**JULIE A. BARRAS**

**VERSUS**

**CARDINAL SERVICES, LLC, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 129197
HONORABLE SUZANNE M. DE MAHY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED; AND REMANDED.**

**Eric T. Haik**
**Haik, Minvielle & Grubbs**
**P. O. Box 11040**
**New Iberia, LA 70562-1040**
**(337) 365-5486**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
      **Darius Troy Barras**
      **Julie A. Barras**

**Kevin P. Merchant**
**Phillip M. Smith**
**NeunerPate**
**1001 West Pinhook Road, Suite 200**
**Lafayette, LA 70503**
**(318) 237-7000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **St. Paul Fire and Marine Insurance Company, Inc.**

**KYZAR, Judge.**

The plaintiffs, Darius Troy Barras and Julie A. Barras, appeal from trial court judgments granting summary judgment in favor of the defendant, St. Paul Fire and Marine Insurance Company, Inc., denying their motion for partial summary judgment, and dismissing their claims against St. Paul Fire and Marine Insurance Company, Inc. with prejudice. For the following reasons, we affirm in part, reverse in part, render judgment, and remand.

## DISCUSSION OF THE RECORD

On January 29, 2016, Mr. Barras, an employee of Vesco Rental and Pressure Control, LLC (Vesco Rental), was driving his work vehicle eastbound on U.S. Highway 90 in Iberia Parish when he was struck by a westbound vehicle driven by Roland Joseph. Mr. Joseph, who died as a result of his injuries, was found to have a blood alcohol content of 0.16%. He was further found to be the sole cause of the accident, and his insurer, Imperial Fire and Casualty Insurance, tendered its policy limits of $15,000.00 to Mr. Barras.

Mr. Barras, who was in the course and scope of his employment at the time of the accident, suffered multiple fractures, underwent numerous surgeries, and endured a lengthy rehabilitation period as a result of his injuries. He further suffered an 87% loss of vision in his left eye.

On November 4, 2016, the Barrases filed suit against Cardinal Services, LLC and Vesco Rental (referred to collectively as Cardinal Services)[1] and their insurer, St. Paul Fire and Marine Insurance Company, Inc. (St. Paul), seeking damages under the uninsured/underinsured motorist (UM) provisions of their insurance policy with

---

[1] The St. Paul insurance application lists Cardinal Services as the first named insured in the application. Listed as "other named insureds" in the application are Vesco Rental & Pressure Control, LLC, Cardinal Slickline, and Cardinal Coil Tubing.

St. Paul. In the alternative, should St. Paul's policy be insufficient to satisfy their damages, the Barrases filed suit against their own insurer, State Farm Mutual Automobile Insurance Company (State Farm), seeking damages under the UM coverage provided by the State Farm policy.

State Farm answered the Barrases' petition on November 28, 2016. Subsequently on February 21, 2017, the Barrases filed a motion and order of voluntary dismissal, dismissing, without prejudice, their claims against Cardinal Services and Vesco Rental, but reserving their claims against St. Paul, State Farm, and any unnamed insurers. On February 23, 2017, St. Paul filed peremptory exceptions of no cause and no right of action, answered the Barrases' petition, and requested trial by jury.

On March 14, 2018, St. Paul moved for summary judgment, alleging that Cardinal Services had properly rejected UM coverage in its policy; thus, the Barrases were precluded from asserting such claims against St. Paul. Following a continuance and further discovery, the Barrases filed a motion for partial summary judgment on March 15, 2019, arguing that the UM rejection form signed by Cardinal Services was invalid due to a material alteration and modification of the form, which included the words: "*Actual policy provisions may differ*[.]" They further argued that the UM rejection form was invalid on its face and that it failed to indicate whether it applied to Cardinal Services' auto policy or its umbrella/excess coverage policy, both of which were written by St. Paul.

In support of its motion for summary judgment, St. Paul introduced the affidavits of the following persons: Andrew Smith, an underwriter for Travelers Indemnity Company (Travelers); Jeffrey Allen DuBois, chief operating officer of Cardinal Services; Dwight Andrus, IV, president of Dwight W. Andrus Insurance,

2

Inc.; and James Andrew Holleman, president of Cardinal Services. It also introduced the deposition of Toyia Harper, a former claims adjuster for Travelers.

In his original and supplemental affidavits, Mr. Smith stated that St. Paul received a commercial insurance application, No. ZPP-AP04235-15-N4, from Dwight Andrus Insurance Inc. on behalf of Cardinal Services, which contained a UM rejection form. He stated that St. Paul then issued the commercial insurance policy, No. ZPP-81M32833-15-N4, effective May 29, 2015, to Cardinal Services and that both the insurance application and policy attached to his affidavit were true and correct copies and were maintained by St. Paul in the normal course of business. Mr. Smith stated that options two and three on the UM form were marked "NA" because St. Paul did not offer economic-only UM coverage on the type of policy issued to Cardinal Services. He further stated that the UM form included in the commercial policy applied to the entire policy, including the auto liability coverage and the umbrella/excess endorsement. Mr. Smith stated that these coverages were not separate policies, but were coverages provided in the one policy.

Mr. DuBois stated that he was authorized by Cardinal Services' president, Mr. Holloman, to select insurance coverage on behalf of Cardinal Services, which included the authorization to reject UM coverage. During a May 19, 2015 meeting with Mr. Andrus, he stated that they discussed Cardinal Services' desire to obtain a new insurance policy with St. Paul, as well as the "options regarding UM bodily injury coverage, including but not limited to [Cardinal Services'] option to reject UM bodily injury coverage." Mr. DuBois stated that he executed a commercial insurance application with St. Paul, in which he initialed, signed, and dated the UM rejection form, rejecting UM coverage on behalf of Cardinal Services. Mr. Holloman confirmed that he authorized Mr. DuBois to select insurance coverage on behalf of Cardinal Services, which included the authorization to reject UM coverage.

3

Mr. Andrus stated that he met with Mr. DuBois on May 19, 2015, to discuss Cardinal Services' application for a new insurance policy. Copies of the application and the insurance policy were attached to Mr. Andrus' affidavit. He stated that he discussed Cardinal Services' options regarding UM coverage and that Mr. DuBois executed Cardinal Services' commercial insurance application and initialed, signed and dated the UM coverage form, rejecting UM coverage on Cardinal Services' behalf.

Ms. Harper stated that she was a former senior claims adjuster for Travelers, which is the parent company of St. Paul. She stated that she had no personal recollection of the Barrases' claim against Cardinal Services' UM coverage. Her notes, which were attached to her deposition, indicate that she received a letter of representation from the Barrases' counsel on March 16, 2016, requesting information pertaining to the insurance coverage that St. Paul provided Vesco Rental for the vehicle Mr. Barras was driving at the time of his accident.

Ms. Harper stated that she contacted Cardinal Services' insurance agent on March 24, 2016, and learned that UM coverage had been rejected by Cardinal Services. An email received by Ms. Harper from DeLanya Patin, a claims assistant with Dwight Andrus Insurance, contained Cardinal Services' signed insurance application, number ZPP-AP04235025-15-N4, including a signed UM rejection form rejecting UM coverage. Ms. Harper stated that she emailed a coverage denial letter to the Barrases' counsel that same day, which stated that Cardinal Services' insurance policy did not provide UM coverage for Mr. Barras' accident.

In response to a March 29, 2016 letter from the Barrases' counsel requesting a copy of Cardinal Services' liability policy and/or its UM rejection form, Ms. Harper agreed that she sent an April 12, 2016 letter, with a copy of a UM rejection form attached, to the Barrases' counsel. Although the attached UM rejection form

4

(Exhibit A-2), policy number ZPP-81M32833-15-N4, included the name of the insured, "Cardinal Services, LLC," it neither indicated, by the placement of initials, whether Cardinal Services was accepting or rejecting UM coverage, nor was it signed by the insured's representative or dated. Ms. Harper, although she had no personal recollection of sending this letter, stated that the sending of this copy of the UM rejection form was a mistake because she had already received a copy of the signed UM rejection form from Ms. Patin on March 24, 2016.

Attached to Ms. Harper's deposition were four UM rejection forms, which were provided to the Barrases by St. Paul. Exhibit A-2 was as described above. Exhibit C, containing the notation "DEF-UNDERWRITING FILE 193," was formatted differently from the other three forms, and contained no information identifying either the insured, the insurer, the policy number, the selection/rejection of UM coverage, or the date.

Exhibit D, containing the notation "DEF-UNDERWRITING FILE 101," identified both St. Paul and Travelers as the insurer/insurers, identified the insured as "Cardinal Services, LLC," and contained the policy number, ZPP-APO4235025-15-NR. However, the form did not indicate, by the placement of initials, whether the insured was accepting or denying UM coverage, and it was neither signed by Cardinal Services' legal representative nor dated. This form also included the following italicized language in the left margin of the form: "* *This is not a certified copy of any policy form. * Actual policy provisions may differ.* *"

Exhibit E, containing the notation "ST PAUL 386," identified the insurer[s], St. Paul and Travelers; identified the insured, Cardinal Services; and, by the placement of initials, the rejection of UM coverage by Cardinal Services' legal representative. The form also contained the indecipherable signature of Cardinal Services' legal representative, the insurance application number, ZPP-

5

APO4235025-15-N4, and was dated May 19, 2015. It also contained the following italicized language in the left margin: "* *This is not a certified copy of any policy form. * Actual policy provisions may differ.* *"

When asked about the four UM rejection forms, Ms. Harper had no idea why Cardinal Services' file contained multiple UM rejection forms. Nor did she know why the italicized language was located in the left margins of Exhibits D and E or if this addition effectively altered the UM rejection forms. However, Ms. Harper agreed that this superfluous language was not contained in the Louisiana Commissioner of Insurance's UM rejection form. When pressed, she stated that from a general standpoint, "I would assume it's raising awareness that there may be a different form out there." However, she said that she was not in a position to interpret the language.

After reviewing a certified copy of Cardinal Services' insurance policy, No. ZPP-81M32833-15-N4, Ms. Harper agreed that the policy was in effect from May 29, 2015 through May 29, 2016. She stated that the Policy Form List, which she likened to a table of contents, did not list the UM rejection form as part of Cardinal Services' policy. She said that despite this absence, the policy's auto coverage summary indicated that UM coverage was not provided by the policy.

With regard to the "umbrella/excess section" of the policy, Ms. Harper could not explain why this section was labeled as a renewal or, if indeed, this section of the policy was a renewal as opposed to a new policy. She further answered that she neither knew nor recalled any instances where an "excess policy would renew and there would be a different underlying policy written through a different carrier." Ms. Harper agreed that there was a difference between an excess policy and the underlying policy. However, she did not know if separate UM rejection forms were required for the excess policy and the underlying policy. She stated that different

6

companies handled things differently, and she could not remember how Travelers handled these UM rejection forms.

In support of their motion for partial summary judgment and in opposition to St. Paul's motion for summary judgment, the Barrases submitted excerpts and the attachments from Ms. Harper's deposition and St. Paul's answers to their interrogatories. In its June 2, 2017 answer to the Barrases' fourteenth interrogatory, St. Paul stated that it did not "currently possess the name and employment capacity of the individual or individuals that signed the attached copy of the Commercial Insurance Application (ST PAUL 311-389)."

Following an April 5, 2019 hearing, the trial court issued reasons for judgment, finding that Cardinal Services had properly rejected UM coverage under St. Paul's policy and that only one UM rejection form was required because Cardinal Services rejected UM coverage in both its auto and excess policy coverages. Judgment granting summary judgment in favor of St. Paul, dismissing the Barrases' claims against it, with prejudice, was rendered on April 5, 2019. A separate judgment denying partial summary judgment in favor of the Barrases was rendered that same day. It is from these judgments that the Barrases appeal.

On appeal, the Barrases raise two assignments of error committed by the trial court:

1. The trial court erred in granting St. Paul's Motion for Summary Judgment; and

2. The trial court erred in denying Appellants' Motion for Partial Summary Judgment.

## OPINION

Summary judgment is a procedural device used when there is no genuine issue of material fact. *Murphy v. Savannah*, 18-991 (La. 5/8/19), 282 So.3d 1034; La.Code Civ.P. art. 966(A)(2). Appellate courts review summary judgment *de novo*

7

using the same criteria that governs the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. La. Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058; La.Code Civ.P. art. 966(A)(3).

A material fact is one that "potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755.

Although the mover bears the burden of proof for the motion, if it will not bear the burden of proof at trial, then it need only point out to the trial court "the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.Code Civ.P. art. 966(D)(1). Once this occurs, the burden shifts to "the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

Typically, the interpretation of an insurance contract presents a question of law, which can properly be resolved through a motion for summary judgment. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945. "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *Bernard v. Ellis*, 11-2377, p. 9 (La. 7/2/12), 111 So.3d 995, 1002.

8

In accordance with Louisiana law, all insurance policies that provide liability coverage "arising out of the ownership, maintenance, or use of any motor vehicle," shall include UM coverage in amounts "not less than the limits of bodily injury liability provided by the policy," unless the insured "rejects coverage, selects lower limits, or selects economic only coverage" on a form prescribed by the Louisiana Commissioner of Insurance. La.R.S. 22:1295(1)(a)(i), (ii). This mandate extends to umbrella and excess policies if those policies cover liability "arising out of the ownership, maintenance, or use of a motor vehicle." *S. Am. Ins. Co. v. Dobson*, 441 So.2d 1185, 1190 (La.1983) (on rehearing) (quoting La.R.S. 22:1406(D)(1)(a)).[2]

"A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." La.R.S. 22:1295(1)(a)(ii).

> Uninsured motorist coverage embodies a strong public policy, which is to provide full recovery for innocent automobile accident victims who suffer damages caused by a tortfeasor who has no coverage or is not adequately covered by liability insurance. *Cutsinger* [*v. Redfern*], [08-2607 (La. 5/22/09),] 12 So.3d 949 (citing *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La.11/29/06), 950 So.2d 544, 547). The underlying purpose of uninsured motorist coverage "is to promote and effectuate complete reparation, no more or no less." *Id.* (citing *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575, 579 (La.1982)). To carry out the objective of providing reparation for persons injured through no fault of their own, the statute is liberally construed. *Id.* at 949-50 (citing *Taylor v. Rowell*, 98-2865 (La.5/18/99), 736 So.2d 812, 816; *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La.1987)). Any exclusion in uninsured motorist coverage must be clear and unmistakable. *Id.* at 950 (citing *Duncan*, 950 So.2d at 547).

*Bernard*, 111 So.3d at 1002-03.

---

[2] The original UM statute was numbered La.R.S. 22:1406(D). It was redesignated as La.R.S. 22:680 by 2003 La. Acts No. 456, § 3. It has since been renumbered to its present iteration, La.R.S. 22:1295, by 2008 La. Acts No. 415, § 1.

In *Duncan v. U.S.A.A. Insurance Co.*, 06-363, pp. 13 (La. 11/29/06), 950 So.2d 544, 552, the supreme court stated that the UM rejection form prescribed by the commissioner of insurance involved six tasks to be completed by the insured:

> The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or the legal representative signs the form evidencing the intent to waive UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to. Thus, the policy number is relevant to the determination of whether the insured waived UM coverage for the particular policy at issue.

The supreme court noted that although a rebuttable presumption arises with a properly completed and signed UM waiver, the absence of this presumption does not mean that the insurer is given the opportunity to actually prove that the insured knowingly waived UM coverage:

> This argument conflates the issues of form and intent. We find that, "The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law," as stated by the First Circuit Court of Appeal in *Cohn* [*v. State Farm Mutual Automobile Insurance Co.*], 03-2820 at p. 5 [(La.App. 1 Cir. 2/11/05)], 895 So.2d [600,] 602, citing *Roger* [*v. Estate of Moulton*], 513 So.2d [1126,] 1131 [(La.1987)]. As stated above, the legislature gave the commissioner of insurance the authority to create a form and stated that "such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver.

*Id.* at 553.

Thus, the failure of the insured to properly complete the UM waiver form invalidates the UM waiver and causes UM coverage to be read into the policy equal to the limits of bodily injury provided by the policy.

In *Duncan*, the insured rejected UM coverage on the form prescribed by the commissioner of insurance but failed to fill in the policy number on the form. The supreme court found that this rendered the UM rejection form invalid and held that the insured's policy provided UM coverage at limits equal to the liability limits provided by the policy. It further held that "reformation of a UM waiver is precluded when the change adversely affects the rights of persons who, prior to the reformation, would be able to recover damages under the UM coverage provisions." *Id.* at 554.

A review of the supreme court opinions addressing UM waiver issues since *Duncan* is helpful. In *Gray v. American National Property & Casualty Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839, a UM waiver form was sent to the representative of the Beauregard Parish School Board, who signed and initialed the form, selecting lower UM limits. The signed form was then returned to the insurance agent, whose employee filled in the policy number, the date of the policy, and the $100,000.00 lower limits selected by the insured. The trial court granted summary judgment in favor of the plaintiff, finding the school board's UM waiver invalid, and denied the insured's cross motion for summary judgment. After writs were denied by this court, the supreme court granted the insured's application for supervisory writs. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-592 (La.App. 3 Cir. 7/11/07) (unpublished writ), *writ granted*, 07-1670 (La. 11/16/07), 967 So.2d 513.

In affirming the trial court's grant of summary judgment in favor of the plaintiffs, the supreme court stated:

> We now hold that compliance with the form prescribed by the Insurance Commissioner involves more than the rote completion of the "six tasks" identified in *Duncan* by someone at sometime. Instead, we find that, in order for the form to be valid, the six tasks must be completed before the UM selection form is signed by the insured, such that the signature of the insured or the insured's representative signifies an acceptance of and agreement with all of the information contained on the form. An insurer who is unable to prove that the UM selection form was completed before it was signed by the insured simply cannot meet its

11

burden of proving by clear and unmistakable evidence that the UM selection form is valid.

*Id.* at 849.

The supreme court further rejected the insured's arguments that the form, as completed by the insurance agent, reflected the insured's intent to waive UM coverage and that the subsequent actions of the insurance agent constituted a valid reformation of the policy. It noted that neither the insured's intent to waive UM coverage nor reformation of the UM waiver would be sufficient to resurrect an invalid UM rejection.

The supreme court stated that "[a]ny perceived unfairness to the insurer resulting from this decision is, we believe, offset by the fact that the insurer had both the authority and the opportunity to assure that the UM selection form in this case was completed properly." *Id.* It further noted that the "insurer, not the insured, has the responsibility of assuring that the form is completed properly, and [the insurer] did not fulfill that responsibility in this case." *Id.* at 850. Thus, it stated that the insurer, once it received the incomplete form from the insured, could have returned the form to the insured, with instructions for its proper completion.

In *Harper v. Direct General Insurance Co.*, 08-2874 (La. 2/13/09), 2 So.3d 418 (per curiam), the supreme court held that the insured's waiver of UM coverage was valid when it contained the printed name of the insured and the signature and initials of the insured's representative, whose authority to sign the waiver was established by affidavit. In doing so, the supreme court stated:

> A review of our opinion in *Duncan* reveals that we used the disjunctive "or" with regard to tasks # 3 and # 4: "(3) printing the name of the named insured **or** legal representative; (4) signing the name of the named insured **or** legal representative." [emphasis added] Nothing in *Duncan* links these two separate tasks into a single task, as the district court suggested. To the contrary, as long as the name of the named insured is printed and the legal representative signs the form, both tasks are satisfied. Any other interpretation would lead to absurd results,

12

because if the name of the corporate insured is printed as the named insured, it is obvious the corporate insured cannot sign its name, but must act through its legal representative.

*Id.* at 419-20; *see also Banquer v. Guidroz*, 09-466 (La. 5/15/09), 8 So.3d 559 (per curiam), which presented the identical issue.

In *Gingles v. Dardenne*, 08-2995 (La. 3/13/09), 4 So.3d 799 (per curiam), the supreme court held that a UM waiver by the insured was valid despite the fact that it did not include the insurance company's name. It noted that the commissioner of insurance's Bulletin 98-01 stated that for identification purposes, the insurance company's name had to be placed on the lower left-hand corner of the UM waiver form. The supreme court held that because the UM waiver form satisfied all of the tasks enunciated by *Duncan*, it was valid despite the absence of the insurer's name.

In *Lynch v. Kennard*, 09-282 (La. 5/15/09), 12 So.3d 944 (per curiam), the supreme court held valid a UM waiver despite the fact that the insured's secretary inserted the date on the form after the insured signed and initialed the form and then walked out of the office. The supreme court held that because the form was properly completed and signed, the plaintiff failed to rebut the presumption that that the insured knowingly rejected UM coverage.

In *Morrison v. USAA Casualty Insurance Co.*, 12-2334 (La. 1/11/12), 106 So.3d 95 (per curiam), the insured's representative failed to initial whether he was selecting or rejecting UM coverage prior to signing the form. The insurer returned the incomplete form to the insured, who then initialed that he was rejecting UM coverage. The supreme court, in finding that the insured's rejection of UM coverage was valid, held that the actions of the insured were consistent with its finding in *Gray* and, "[a]lthough the exact date of the initialing is unclear, the evidence presented by relator establishes it occurred prior to the subject accident." *Id.* at 96.

13

In *Tuson v. Rodgers*, 15-1334, p. 4 (La. 10/30/15), 178 So.3d 127, 128 (per curiam), the insured struck through the words "each person" on the UM waiver form and inserted the word "CSL" (combined single limit) over the struck-through word "person." This court held that the UM waiver was invalid because the insured altered the form, failed to initial his alteration, and the alteration was unnecessary because the policy coverage was per accident and not per person. *Tuson v. Rodgers*, 15-66 (La.App. 3 Cir. 6/3/15), 165 So.3d 458. On appeal, the supreme court reversed and held that the insurer should not be penalized for the commissioner of insurance's failure to provide an adequate UM waiver form. It further held that the UM waiver form clearly reflected the insured's decision to choose lower UM limits.

On August 29, 2008, the commissioner of insurance issued Bulletin No. 08-02, which contained a revised UM waiver form. The commissioner stated:

> The revision is in response to the myriad of issues that Louisiana courts have recently examined regarding the current UM form, including, but not limited to, what constitutes a properly completed form, what information must be included prior to the insured's signature, policy identification, company identification and backdating. The revised UM form incorporates changes designed to address these issues and assist both insureds and insurers as well as Louisiana courts.

The bulletin provided the following changes and instructions as follows:

### Important Form Changes

**Option to "select" UMBI coverage** – The revised UM form removes the option to "select" UMBI coverage with the same bodily injury liability limits set forth in the policy. An insured is not required to "select" UMBI coverage at the same limit as the bodily injury liability coverage set forth in the policy under LSA-R.S. 22:680, because such coverage is statutorily presumed absent a properly completed and signed UM form indicating a different choice.

**Policy number and other policy identification information** – The revised UM form includes two boxes on the lower right hand corner of the form.

> The upper box contains an area that the insurer may use for policy information purposes (e.g. policy number, binder number [sic], application number, etc.). This box

14

does not need to be filled in for the form to be properly completed.

The lower box <u>must</u> contain one of the following: the individual company name, the group name, or the insurer's logo.

**<u>Combined single limits</u>** – The revised form now provides an option for combined single limits.

## <u>Other Information and Instructions</u>

A policy effective date is not explicitly stated on the revised UM form because the form is conclusively presumed to become part of the insurance contract. The date on the insurance contract is sufficient for identifying the effective date of the UM form.

The revised UM form does not have to be physically attached to the policy to conclusively become part of the policy.

If an insurer offers economic-only UMBI, the insurer must make a form filing and obtain approval from the Louisiana Department of Insurance.

The following tasks must be completed by the insured:

- His/Her signature
- His/Her printed name to identify his/her signature.
- The date the form is completed.
- Initials to select/reject UMBI coverage prior to signing the form.

If the insured selects lower limits (available in options 1 and 3 of the revised UM form) the exact amount of coverage must be printed on the appropriate line on the revised UM form prior to the insured signing the form.

Based on the forgoing, the commissioner's prescribed form now requires the insured to complete only five tasks in order to waive UM coverage: 1) initialing the selection or rejection of UMBI coverage; 2) if lower limits are selected, filling in the amount of coverage selected; 3) signing the name of the insured or legal representative; 4) printing the name of the insured or the legal representative; and 5) filling in the date the form was completed. The commissioner further requires that the first and second task be completed before the insured signs the UM waiver form. Additionally, it is no longer necessary to include the policy number, binder number,

or application number on the form. However, the insurance company's name, group name, or logo must be placed in the lower box located in the bottom right-hand corner of the form.

In *Lachney v. Hanover Insurance Co.*, 04-2316, p. 5 (La.App. 1 Cir. 11/4/05), 927 So.2d 380, 382, *writ denied*, 05-2432 (La. 3/24/06), 925 So.2d 1238, the first circuit held that even though the UM form contained "technical errors,"[3] the "form employed comports in every substantial way with the required statutory form." It further held that it was clear from the UM form that "the insured intended to choose UM coverage in a lesser amount than the liability policy limits." *Id.* The first circuit further held:

> After carefully reviewing the UM selection/rejection form signed on July 27, 2001, by the president and legal representative, we conclude that the method of rejecting and/or selecting UM coverage satisfies the statutory requirements. The form clearly states that the policy will include UMBI coverage at the same limits as bodily injury liability coverage unless requested otherwise. The form clearly informs the insured that it can select UM coverage in an amount equal to the bodily injury limits of the policy, or an amount that will compensate for economic and non-economic losses with limits lower than the bodily injury liability coverage.

> Although not exactly on point with this case, in *Jones v. Jones*, 36,040 (La.App. 2 Cir. 5/8/02), 817 So.2d 454, the court ruled that even though the prescribed form requires that the insurance company name and policy number be included on the UM form, this omission should not invalidate an otherwise valid form because it was clear that the insured wanted to reject UM coverage. Here, despite a number of technical errors, it is clear that the insured intended to choose UM coverage in a lesser amount than the liability policy limits. The form employed comports in every substantial way with the required statutory form.

> Further, Blacks Law Dictionary (8th ed.2004) provides that "prescribe" means to dictate, ordain, direct or to establish authoritatively (as a rule or as a guideline). It defines "promulgate" as to declare or announce publicly; to proclaim; to put a law into force and

---

[3] The UM form did not include the language, "This form was promulgated pursuant to La. R.S. 22:1406D(1)(a)(ii). This form may not be altered or modified." It used the word "funeral costs" instead of "funeral expenses"; in one instance, the word "policy" was used two times successively; and the form contained the identification number 8089 in the left-hand corner. *Lachney*, 927 So.2d at 381-82.

effect. These words are not synonymous. Thus, even though plaintiffs argue that the exact form promulgated by the Commissioner of Insurance was not used, they introduced no evidence to show that every word, including the superfluous language, was required by the Commissioner to make the form valid.

*Id.*

In *Scarborough v. Randle*, 12-1061, pp. 5-6 (La.App. 3 Cir. 2/6/13), 109 So.3d 961, 965 (alteration in original), this court, after quoting *Lachney*, noted that the supreme court declined to apply a hyper-technical interpretation in *Banquer*:

> In *Banquer*, the plaintiffs also argued the invalidity of a UM rejection based upon the form containing the signature without the printed name of the legal representative of the corporate insured. Considering this issue, the first circuit stated, "[A]s compliance with the form prescribed by the commissioner of insurance is necessary for the UM form to be deemed valid, see *Duncan*, 06-363 at 14, 950 So.2d at 553, the ACE form must be deemed invalid for failure to include the printed name of the person who signed the form." *Banquer v. Guidroz*, 08-356, pp. 6-7 (La.App. 1 Cir. 12/23/08), 5 So.3d 206, 210. The supreme court granted writs and reversed, finding that the *Duncan* requirements had been satisfied. Notably, as pointed out in the dissent to the first circuit opinion, that form also contained a "clerical error" in omitting a word; yet, the supreme court found the rejection to be valid. *Id.* at 211.

*See also Stone v. Allstate Prop. & Cas. Ins. Co.*, 18-547, p. 6 (La.App. 3 Cir. 3/7/19), 269 So.3d 961, 965 ("Clearly, according to the Louisiana Supreme Court and this court, some alterations of the form do not rise to the level of invalidating the insured's selection or rejection of UM.")."

In its April 10, 2019 reasons for judgment, the trial court stated the following:

> The UM coverage form was initialed by a legal representative of Cardinal Services rejecting coverage. The section of the form discussing lower limits was filled out as not applicable. Cardinal Services[']] information was printed as the name of the insured. The form was signed by a legal representative of Cardinal Service[s]. The form included the policy application number since a policy number was not issued yet. The form included the date. The court finds all *Duncan* [s]tandards to be satisfied.
>
> . . . .
>
> The plaintiff argues that the form is invalid because [of] the additional wording included [o]n the side of the form "Actual policy

17

provisions may differ." The court reviewed the policy and policy application. The policy application included an additional area where applicant initialed rejecting uninsured motorist coverage in addition to the uninsured motorist coverage form at question. Also, nothing in the actual policy indicated the uninsured motorist coverage was not rejected and/or provided. The court finds that the actual policy provisions did not differ from the policy application. Therefore, the court does not find that the wording is a material alteration or modification to the form that would render the form invalid.

A close reading of St. Paul's UM rejection form reveals multiple alterations from the 2008 revised UM rejection form. In the opening paragraphs of St. Paul's UM form, "which" is used in place of "that" on the fourth line of the form; commas are inserted before and after "but are not limited to" on the tenth line of the form; and "and" is inserted after "inconvenience," and before "mental" on the eleventh line of the form. The majority of the alterations contained in St. Pauls' form are located in the closing paragraph, which states:

> The choice I made by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.

The Commissioner's form provides as follows:

> The choice indicated and initialed on this form will apply to all persons and/or entities insured under this policy. This choice shall apply to the motor vehicles described in this policy and to any replacement vehicles, to all renewals of this policy, and to all reinstatement, substitute or amended policies until a written request is made for a change to the Bodily Injury Liability Limits, the UMBI limits or UMBI Coverage.

The only other alteration is located in the left margin of St. Paul's form: "* *This is not a certified copy of any policy form. * Actual policy provisions may differ. *"*

After reviewing the record *de novo*, we find that the alterations to the UM rejection form do not render Cardinal Services' rejection of UM coverage invalid. Despite the above noted alterations, which we find occur only in the explanatory areas of the form, the substantive section of St. Paul's form, that section where the

18

insured selects or rejects UM coverage, is identical to the commissioner's revised form. Moreover, the five tasks deemed necessary by the commissioner for a valid rejection of UM coverage were undisputedly fulfilled by Cardinal Services in that its representative, Mr. DuBois, initialed his rejection of UM coverage, signed the form, and filled in the date the form was completed. The form also contained the name of the insured, Cardinal Services, and the name of the insurer, St. Paul, as well as Travelers' logo.

Accordingly, we find that Cardinal Services validly rejected UM coverage in the auto section of its commercial insurance policy with St. Paul. Thus, the Barrases' claims against that portion of St. Paul's policy are dismissed with prejudice. However, we find Cardinal Services' UM waiver invalid with regards to the umbrella/excess section of the policy.

As stated previously, UM coverage has been extended to umbrella and excess policies that cover liability "arising out of the ownership, maintenance, or use of a motor vehicle." *Dobson*, 441 So.2d at 1190; La.R.S. 22:1295(1)(a)(i). The umbrella/excess section of Cardinal Services' policy provides such coverage. In *Futch v. Commercial Union Insurance Co*, 625 So.2d 1019, 1021 (La.1993) (citations omitted), the supreme court stated that "[b]ecause of the strong public policy favoring UM coverage, formal rejection of that benefit is required. The insurer has the burden of proving a legal rejection of UM coverage." In *Hayes v. De Barton*, 16-541, p. 8 (La.App. 3 Cir. 2/15/17), 211 So.3d 1275, 1281 (citations omitted), *writ denied*, 17-458 (La. 5/1/17), 220 So.3d 743, this court stated that "[t]he holdings in *Dobson* and *Futch* . . . illuminate the fact that auto policies and umbrella policies are separate and distinct policies for the purpose of UM coverage."

St. Paul obviously recognized this fact by placing a UM rejection form at the end of the umbrella/excess section of its insurance application. This section, located

19

just before the signature line, indicates that it is only applicable in Louisiana, New Hampshire, Vermont, and Wisconsin. The Louisiana section provides (case and formatting changed):

> I acknowledge that UM coverage has been explained to me, and I have been offered the option of selecting UM limits equal to my liability limits, UM limits lower than my liability limits, or to reject UM coverage entirely.
>
> 1. I select UM limits indicated in this application. _____ or
>                                                    (Initials)
> 2. I reject UM coverage in its entirety. _____
>                                          (Initials)

The second option, rejecting UM coverage in its entirety, was initialed by Mr. DuBois, and he signed his name at the end of the form and filled in the date, May 19, 2015.

After reviewing this form, we find that it fails to comply with the commissioner's revised form. Bulletin No. 08-02 states that "[o]n or after January 1, 2010, all UM selection/rejections for new policies as well as modifications to the limits of liability of in-force policies shall be executed on the revised UM form issued with LDOI Bulletin No. 08-02." St. Paul's form in no way conforms to the revised form as it reduces a full-page letter-sized document down to three lines. As stated in *Higginbotham v. USAgencies Casualty Insurance Co., Inc.*, 17-491, 17-497, p. 11 (La.App. 3 Cir. 6/13/18), 247 So.3d 916, 923, *writ denied*, 18-1217 (La. 10/29/18), 254 So.3d 1213, "The intent of the parties is quite simply irrelevant where a UM form does not meet the requirements of Louisiana law[.]" Here, we find that St. Paul's form does not meet the requirements of Louisiana law.

We further reject St. Paul's argument and the trial court's finding that only one UM waiver was required for Cardinal Services' policy because the umbrella/excess coverage and the general liability coverage were part of the same insurance policy. Because proof of a formal rejection of UM coverage is necessary

20

for an insurer to prove a legal rejection of UM coverage by its insured and because of the separate and distinct nature of auto policies and umbrella policies for the purposes of UM coverage, we find that Cardinal Services should have executed separate UM waivers for its auto policy and its umbrella/excess policy, even if both of those coverages were part and parcel of the same insurance policy.

We further find that the unfairness of this decision is offset, as stated in *Gray*, by the fact that St. Paul had both the authority and the opportunity to ensure that Cardinal Services completed the proper UM rejection form for the umbrella/excess policy, especially since the supreme court's decisions in *Dobson* and *Futch* were rendered in 1983 and 1993, respectively. When it received the insurance application from Dwight W. Andrus Insurance, St. Paul could easily have notified Mr. Andrus that Cardinal Services needed to execute a separate UM rejection form under its umbrella/excess policy. *See Morrison*, 106 So.2d 95.

Accordingly, we affirm in part the trial court's judgment in favor of St. Paul, finding that Cardinal Services executed a valid UM waiver under its commercial auto policy; we reverse in part the judgment in favor of St. Paul, finding that Cardinal Services' executed a valid UM waiver under its umbrella/excess policy; and we render judgment in favor of the Barrases, finding that Cardinal Services' umbrella/excess policy provides UM coverage in amounts equal to the bodily injury liability limits set forth in the umbrella/excess policy provided by St. Paul. For these same reasons, we affirm in part, reverse in part the trial court's judgment denying the Barrases' motion for partial summary judgment and render judgment in favor of the Barrases.

## DISPOSITION

Based on the foregoing reasons, the trial court judgments in favor of St. Paul Fire and Marine Insurance Company and against Darius Troy Barras and Julie A.

21

Barras are affirmed in part and reversed in part, and judgment is rendered in favor of Darius Troy Barras and Julie A. Barras, finding that UM coverage under Cardinal Services, LLC's umbrella/excess policy was not validly waived. This matter is remanded to the trial court for further proceedings. The costs of this appeal are assessed equally between the parties.

**AFFIRMED IN PART; REVERSED IN PART; RENDERED; AND REMANDED.**